Charles BARNETT, Appellant,

v.

Laura P. WILEY, Appellee.

No. 2002–SC–0180–DG.

Supreme Court of Kentucky.

April 24, 2003.

Rodney McDaniel, Frankfort, for Appellant.

Rick Eugene Sparks, Assistant Franklin County Attorney, Frankfort, for Appellee.

Lisa Ann Beran, Kentucky Domestic Violence Association, Frankfort, for Kentucky Domestic Violence Association, Amicus Curiae.

Opinion of the Court by Justice JOHNSTONE.

The sole issue raised in this appeal is whether Appellant, Charles Barnett, and Appellee, Laura Wiley, were an "unmarried couple" within the meaning of KRS 403.720, so that Wiley could obtain a Domestic Violence Order ("DVO") against Barnett. We hold that they were not an "unmarried couple," as defined in KRS 403.720(3) and, therefore, we reverse the Court of Appeals.

On February 21, 2000, Wiley petitioned the Franklin Circuit Court to enter a DVO against Barnett. In the petition, she alleged that Barnett approached her car, banged on the window, threatened to kill her, and followed her in his vehicle in a reckless manner after she drove away. At the hearing on the DVO motion, Wiley testified that she was not related to Barnett, had no children in common with him, and had never lived with him. Nonetheless, the trial court granted her petition for a protective order.

Barnett moved to have the petition dismissed on grounds that Wiley did not have standing to seek a DVO against him, because they were not an "unmarried couple" as the term is defined by KRS 403.720(3). The trial court summarily denied the motion. Barnett then filed a motion to reconsider. The trial court again denied the motion, but this time included conclusions of law. In the order, the trial court reasoned that its expansive definition of an "unmarried couple" was consistent with the assuredly vital public policy of protecting and preventing domestic violence.

In a two-to-one decision, the Court of Appeals agreed with the trial court's reasoning and affirmed. In his dissent, Judge Buckingham concluded that the plain language of the statute could not be stretched to construe a dating relationship as falling within the definition of an "unmarried couple." We agree with Judge Buckingham and, therefore, reverse the Court of Appeals' decision.

KRS 403.725 states that "[a]ny family member or member of an unmarried couple" may file a petition for a protective order under the domestic violence statutes. "Member of an unmarried couple" is defined as including "each member of an unmarried couple which allegedly has a child in common, any children of that couple, or a member of an unmarried couple who are living together or have formerly lived together." KRS 403.720(3). There are no Kentucky cases that address the issue of what the term "living together" means in the context of domestic violence statutes. But this does not mean we are without guidance.

In their definitive treatise on Kentucky domestic relations law, Justice Keller and

Professor Graham have this to say about the phrase:

> Legislatures have generally expanded the definition of protected parties in response to wider diversity in family structure. The Kentucky statute does not define "living together." Courts give substance to this language, and in doing so they should focus on the purpose of the statute rather than technicalities. The point of domestic violence legislation is to protect victims from harm caused by the persons whose intimate physical relationship to the victim increases the danger of harm, either because the parties live in physical proximity or because the relationship is one whose intimacy may disable the victim from seeking protection.

Louise E. Graham and James E. Keller, 15 *Kentucky Practice: Domestic Relations Law*, § 5.1 at 107 (2d ed. West 1997).

We agree with the trial court and the Court of Appeals that the domestic violence statutes should be construed liberally in favor of protecting victims from domestic violence and preventing future acts of domestic violence. *See* KRS 500.030 ("All provisions of this code shall be liberally construed according to the fair import of their terms, to promote justice, and to effect the objects of the law."). But the construction cannot be unreasonable. *See Beckham v. Board of Education of Jefferson County*, Ky., 873 S.W.2d 575, 577 (1994) ("We are not at liberty to add or subtract from the legislative enactment nor discover meaning not reasonably ascertainable from the language used."). The phrase "living together" implies some sort of cohabitation. This is consistent with the definition of "cohabitation," which means the "fact or state of living together, especially as partners in life, usually with the suggestion of sexual relations." *Blacks Law Dictionary* (7th ed. 1999).

A number of courts have addressed the "issue of defining and interpreting the term 'cohabitation' as it applies to persons charged with committing a crime of violence pursuant to domestic violence statutes." Elizabeth Trainor, *Cohabitation for the Purposes of Domestic Violence Statutes*, 71 A.L.R. 5th 285, § 2(a) (West Group 2002). As there is no Kentucky case law on what constitutes proof of "cohabitation" or "living together," we turn to these cases for guidance. *See Brown v. Commonwealth*, Ky.App., 40 S.W.3d 873, 876 (1999).

In *State v. Kellogg*, 542 N.W.2d 514 (Iowa 1996), Kellogg was charged with domestic abuse assault under the Iowa penal code. The applicable statutes defined the crime in terms of assault involving domestic abuse. *Id.* at 516. In turn, "domestic abuse" was defined in terms of "an assault between family or household members who resided together at the time of the assault." *Id.* And, finally, "family or household members" were defined as "spouses, persons cohabitating, parents or other persons related by consanguinity or affinity." *Id.* The trial court instructed the jury that "cohabitating means dwelling together or living in the same place." *Id.* At issue on appeal was whether this instruction was correct. On review, the *Kellogg* court undertook to determine the meaning of "cohabitating" as it was used in the statute to decide this issue.

Relying on dictionary definitions of the term, as well as Iowa case law interpreting it within the context of divorce law, the *Kellogg* court held that the trial court's instruction was too broad:

> As instructed by the court that "cohabiting" means "dwelling or living together in the same place," a jury finding that persons were mere roommates or lived in the same apartment building would be sufficient to support a conviction. We

do not find any statutory evidence that the legislature intended this breadth of application from its enactment of the Domestic Abuse Act.

*Kellogg,* 542 N.W.2d at 518. In reversing the trial court, the *Kellogg* court provided some direction for the trial court on retrial:

> While proof of a sexual relationship between the parties is not required to establish cohabitation, it is nevertheless a factor for jury consideration. Two California cases are instructive on this point. In *People v. Ballard,* 203 Cal. App.3d 311, 249 Cal.Rptr. 806 (1988), and *People v. Holifield,* 205 Cal.App.3d 993, 252 Cal.Rptr. 729, 731 (1988), the California Court of Appeals examined a domestic abuse statute similar to Iowa's in the face of a constitutional challenge by the defendant that the provisions were void for vagueness in that they failed to set out a precise definition of cohabitation. In *Ballard,* the court upheld a trial court's refusal to instruct the jury that cohabitation required a finding of sexual relationship. *Ballard* then noted the purpose of the statute was to widen the protections previously granted by the "wife beating" statute to protect the large numbers of couples who live as husband and wife without the formal aspect of marriage.
>
> In *Holifield,* the California court further clarified this interpretation and explained the relationship at issue need not rise to the level of a de facto marriage. In doing so the court noted the particular difficulty involved in determining whether a relationship is equivalent to a marriage.
>
> A police officer, district attorney, court and jury will have far less trouble determining whether a significant live-together relationship exists than determining whether the relationship

is quasi-marital, particularly when there exists such uncertainty over which rights, duties and obligations of marriage are ordinary in our society.

> The court then approved the following indicia for the jury to consider (nonexclusively) in determining whether a couple was cohabiting:
>
> 1. Sexual relations between the parties while sharing the same living quarters.
> 2. Sharing of income or expenses.
> 3. Joint use or ownership of property.
> 4. Whether the parties hold themselves out as husband and wife.
> 5. The continuity of the relationship.
> 6. The length of the relationship.
>
> These six indicia, being nonexclusive, accord with our prior interpretations of the term cohabitation and are also consistent with common understanding of the term cohabit and the intent of the legislature in enacting chapter 236 and its amendments. We adopt them as appropriate considerations for making a factual determination as to whether a couple is cohabiting under the umbrella of chapter 236.

*Kellogg,* 542 N.W.2d at 518 (internal spot cites omitted).

■ Likewise, we believe that the six factors discussed in *Kellogg* are relevant in determining whether two people are "living together" within the meaning of KRS 403.720. But under the plain language of the statute, there must be, at a minimum, proof that the petitioner seeking a DVO shares or has shared living quarters with the respondent before a finding can be made that the two are an "unmarried couple" under KRS 403.725. Because there is no proof in the record that Barnett and Wiley ever shared living quarters, either permanently or on a part-time or tempo-

rary basis, we hold that the trial court erred in issuing a DVO against Charles Barnett.

Therefore, we reverse the opinion of the Court of Appeals and remand this case to the Franklin Family Court with instructions to vacate the DVO order against Barnett.

All concur.