Jimmy RANDALL, Appellant,

v.

**Jeri STEWART, Appellee.**

**No. 2006–CA–001254–ME.**

Court of Appeals of Kentucky.

March 2, 2007.

Discretionary Review Denied by Supreme Court June 13, 2007.

Brian R. Good, Louisville, KY, for appellant.

Jennifer G. Sacharnoski, Louisville, KY, for appellee.

Before TAYLOR and WINE, Judges; PAISLEY,[1] Senior Judge.

## OPINION

PAISLEY, Senior Judge.

Jimmy Randall appeals from a domestic violence order (DVO) entered against him by the Jefferson Family Court on May 30, 2006. On appeal, Randall argues that the petitioner, Jeri Stewart, lacked standing to seek a DVO. Finding that the family court erred, we reverse and remand.

According to the record, Randall and Stewart dated for approximately 1½ years. Since they were experiencing difficulties in their relationship, on the evening of May 17, 2006, Stewart went to Randall's apartment to talk to him. While there, Stewart told Randall that she did not want to see him anymore. As she tried to leave, Randall attacked Stewart. He grabbed her, pinned her down on his sofa, and tried to suffocate her by placing his hand over her mouth. As the parties struggled, Randall pushed Stewart onto the floor and hit her in the face. He attempted to force his fingers into Stewart's mouth in another apparent attempt to suffocate her. She bit Randall's hand, and, in response, he produced a balled-up sock which he shoved into Stewart's mouth. He then placed his hand over her nose in yet another attempt to suffocate her, but Stewart continued to struggle and managed to break free. After escaping Randall's clutches, Stewart talked to Randall, calming him. But when Stewart opened the door to leave, Randall attacked Stewart once again. Randall's neighbors heard Stewart's screams and summoned the police. By the time the police had arrived, a neighbor had subdued Randall. Although the police investigated the incident, they neither made a report nor arrested Randall. However, they advised Stewart to seek an emergency protective order (EPO). Later that evening, Stewart filed a domestic violence petition and obtained an EPO.

On May 30, 2006, the Jefferson Family Court held a hearing regarding Stewart's domestic violence petition. Randall moved for dismissal arguing that Stewart lacked standing to file a domestic violence petition. In response to the family court's questioning, Stewart testified that she and Randall had dated for approximately 1½ years. Furthermore, she testified that she and Randall had never been married and that they did not have a child in common. In addition, Stewart stated that she and Randall had never lived together. She did testify that Randall kept a toothbrush and other small personal items at her residence, but did not keep clothing there. Stewart explained that Randall usually stayed a minimum of one to two nights per week at her residence but he did not adhere to a set schedule. Based on Stew-

---

1. Senior Judge Lewis G. Paisley sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

art's testimony, the family court determined that the parties' relationship was sufficient to give Stewart standing to seek a DVO.

After the family court made this determination, it allowed Randall's counsel to question Stewart. In response to those questions, Stewart reiterated her prior testimony and repeated that she and Randall had never lived together. She also testified that neither party was on the other party's lease, deed or mortgage and that Randall had never received mail at her residence nor did she receive mail at his residence. Stewart then detailed the events that had allegedly occurred on the evening of May 17th. After hearing the testimony, the family court found that acts of domestic violence had occurred and were likely to reoccur; thus, the court issued a domestic violence order against Randall. Now, Randall appeals to this Court.

On appeal, Randall reiterates that, according to Stewart's own testimony, they never lived together. Also, citing *Barnett v. Wiley*, 103 S.W.3d 17 (Ky.2003), Randall argues that the Supreme Court of Kentucky has set forth a six-prong test to determine whether two people are "living together" within the meaning of KRS 403.720(3). Based on the evidence adduced at the trial, Randall reasons that Stewart lacked standing to seek a DVO since their relationship did not meet the criteria set forth in *Barnett v. Wiley, supra*.

When reviewing actions tried before the bench, we will give due deference to the trial court's opportunity to judge the credibility of the witnesses and will not disturb its findings of fact unless they are clearly erroneous, that is, not supported by substantial evidence. Kentucky Rules of Civil Procedure (CR) 52.01; *Black Motor Co. v. Greene*, 385 S.W.2d 954, 956 (Ky.1965). According to the Supreme Court of Kentucky, substantial evidence consists of "evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable people." *Smyzer v. B.F. Goodrich Chemical Co.*, 474 S.W.2d 367, 369 (Ky. 1971). In other words, it is that "evidence which would permit a fact-finder to reasonably find as it did." *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky.1986).

According to KRS 403.725(1), any "member of an unmarried couple" may file a petition for a domestic violence order. For the purposes of KRS Chapter 403, the phrase "member of an unmarried couple" has been defined as "each member of an unmarried couple which allegedly has a child in common, any children of that couple, or a member of an unmarried couple who are living together or have formerly lived together." KRS 403.720(3). Obviously, in the present case, we are concerned only with the last clause of this definition, "a member of an unmarried couple who are living together or have formerly lived together." KRS Chapter 403 does not provide a definition for the phrase "living together".

As appellant points out, the Supreme Court of Kentucky addressed this issue in *Barnett v. Wiley, supra*. In *Barnett*, the petitioner alleged, in a petition to obtain a DVO, that the respondent approached her car, hit the window, threatened to kill her, and followed her vehicle as she drove away. *Id.* at 18. At a subsequent hearing, the petitioner testified that she and the respondent were not related, had no children in common, and had never lived together. *Id.* Despite this evidence, or lack thereof, the trial court granted the petition. *Id.* The respondent moved to dismiss the petition arguing that the petitioner lacked standing to seek a DVO since they did not qualify as an "unmarried cou-

ple" as defined by KRS 403.720(3). *Id.* The trial court denied the respondent's motion, and he appealed to this Court, which affirmed the trial court's order. *Id.*

The Supreme Court granted discretionary review and acknowledged that Kentucky case law had yet to define the phrase "living together". However, noting that *Black's Law Dictionary* (7th ed.1999) had defined "cohabitation" as the "fact or state of living together, especially as partners in life, usually with the suggestion of sexual relations[,]" the Supreme Court opined that "living together" implied "some sort of cohabitation." *Id.* at 19. Turning to the case law of other states for guidance, the Supreme Court relied on *State v. Kellogg,* 542 N.W.2d 514 (Iowa 1996) in which the Iowa Supreme Court set forth a non-exclusive list of six factors that a trial court should consider in determining whether a couple are cohabiting:

1. Sexual relations between the parties while sharing the same living quarters.
2. Sharing of income or expenses.
3. Joint use or ownership of property.
4. Whether the parties hold themselves out as husband and wife.
5. The continuity of the relationship.
6. The length of the relationship.

*Id.* Regarding these factors, our Supreme Court stated:

[W]e believe that the six factors discussed in *Kellogg* are relevant in determining whether two people are "living together" within the meaning of KRS 403.720. But under the plain language of the statute, there must be, at a minimum, proof that the petitioner seeking a DVO shares or has shared living quarters with the respondent before a finding can be made that the two are an "unmarried couple" under KRS 403.725.

*Id.* The Supreme Court then concluded that the trial court had erred in issuing the DVO since the record lacked any evidence that the petitioner and the respondent had ever shared living quarters, either permanently, temporarily, or on a part-time basis. *Id.* at 21.

Finding the holding in *Barnett v. Wiley* to be controlling, we turn to the factors set forth in that case. Although the record contains no evidence regarding the continuity of Randall's and Stewart's relationship, Stewart testified that she and Randall had dated for approximately eighteen months. Regarding whether the parties were having sexual relations while sharing the same living quarters, there is no evidence that Randall and Stewart had ever shared living quarters. Furthermore, Stewart testified that Randall would spend one or two nights per week at her residence, and, while this testimony may imply that the parties had sexual relations, the evidence in the record simply did not address this factor. There is no evidence that the parties shared income or expenses. The record indicates that the parties neither jointly owned nor jointly used any property. There is absolutely no evidence that the parties presented themselves as husband and wife. Considering the factors set forth in *Barnett v. Wiley,* the family court's finding that the parties' relationship qualified as an "unmarried couple" as defined by KRS 403.720 was not supported by substantial evidence. Thus, the family court clearly erred when it granted the DVO against Randall since, under these facts, Stewart lacked the standing to seek such a protective order.

While we are compelled to reverse the family court's decision, we sympathize with its desire to issue a DVO in this case. Given the explosive and vicious nature of Randall's attack, it was only by happenstance or providence that Stewart managed to escape Randall's apartment with

only minor physical injuries. Moreover, while we lack the authority to expand the scope of KRS 403.725 to cover dating relationships, this case illustrates the compelling need for the General Assembly to consider such an expansion.[2]

The domestic violence order entered against Randall is reversed, and this matter is remanded to the family court with instructions to dismiss Stewart's petition with prejudice.

ALL CONCUR.

2. "Over the past two decades states have become more inclusive with respect to eligibility requirements in protective orders statutes. Today, 21 states specifically provide statutory eligibility for dating couples to seek orders of protection." H. Eigenberg, K. McGuffee, P. Berry, and W.H. Hall, *Protective Order Legislation: Trends in State Statutes*, 31 Journal of Criminal Justice 411 (2003).