Jason L. **RIVERS**, Appellant,

v.

Sherry **HOWELL**, Appellee.

No. 2008–CA–000451–ME.

Court of Appeals of Kentucky.

Dec. 31, 2008.

Richard L. Decker, Louisville, KY, for appellant.

Lucy M. Heskins, Marjorie A. Farris, Jamie K. Neal, Louisville, KY, for appellee.

Bethany A. Breetz, Louisville, KY, oral argument for appellee.

Before LAMBERT, STUMBO, and THOMPSON, Judges.

## OPINION

THOMPSON, Judge.

Jason L. Rivers appeals from a domestic violence order (DVO) entered against him by the Jefferson Family Court. The issue presented is whether the petitioner, Sherry Howell, had standing to seek a DVO. Because we conclude that the trial court's finding that she was a member of an "unmarried couple" as defined in KRS 403.720(3) was clearly erroneous, we must reverse.

On December 23, 2007, Rivers was arrested and charged with assaulting Howell. Subsequently, Howell sought and obtained an Emergency Protective Order against Rivers. Prior to the DVO hearing, Howell agreed to dismiss the petition without prejudice on the condition that Rivers have no contact with her in conformity with the "no contact order" entered in the pending criminal case.

On January 12, 2008, Howell found Rivers' truck parked in front of her residence. She contacted the police but prior to their arrival, Rivers left the premises. She then

filed a second DVO that was heard on February 4, 2008.

Prior to the commencement of the testimony, Rivers moved to dismiss the DVO on the basis that the parties did not meet the criteria set forth in KRS 403.725, because neither party was a family member or a member of an unmarried couple as defined in KRS 403.720.

At the hearing, Howell testified that she and Rivers had never lived together and maintained separate residences during their five-year relationship. However, they were at one time engaged to be married and, at times, stayed at one another's residence for periods as long as one week. During the relationship, Rivers sometimes had a key to her residence, and she had access to a key to his residence. Her children on occasion spent the night at Rivers' one-bedroom apartment but there was no permanent bed for their use.

Rivers did not dispute that the parties stayed at each others' residences intermittently throughout the relationship but added that he had no significant personal belongings at her residence. He agreed with Howell's testimony that the parties had never resided in the same household.

In addition to the parties, Brian Robins, Christine Stout, and Kenneth Royal testified. All had contact with Rivers at his residence on at least a monthly basis for the past three years, and all testified that they had no knowledge that Rivers and Howell had ever cohabitated. There was no evidence presented that the parties presented themselves as a married couple, shared financial resources or burdens, or owned any joint assets.

■ Our review of the family court's factual finding that Rivers and Howell were an "unmarried couple" for purposes of a DVO proceeding is limited by the clearly erroneous standard. Thus, we can-not reverse the finding of the family court unless it is not supported by substantial evidence. *Randall v. Stewart*, 223 S.W.3d 121 (Ky.App.2007). Substantial evidence is "evidence of substance and relevant consequence, having fitness to induce conviction in the minds of reasonable people." *Smyzer v. B.F. Goodrich Chemical Co.*, 474 S.W.2d 367, 369 (Ky.1971).

■ KRS 403.725 states that "[a]ny family member or member of an unmarried couple" may file a petition for a protective order under the domestic violence statutes. The definition of "member of an unmarried couple" is contained in KRS 403.720(3) and includes "each member of an unmarried couple which allegedly has a child in common, any children of that couple, or a member of an unmarried couple who is living together or have formerly lived together."

■ Until the seminal case of *Barnett v. Wiley*, 103 S.W.3d 17 (Ky.2003), there were no Kentucky cases interpreting "living together" as used in the statute. In *Barnett*, quoting from Louise E. Graham and James E. Keller, 15 *Kentucky Practice: Domestic Relations Law* § 5.1 at 107 (2d Ed. West 1997), the Court pronounced:

> The point of the domestic violence legislation is to protect victims from harm caused by the persons whose intimate physical relationship to the victim increases the danger of harm, either because the parties live in physical proximity or because the relationship is one whose intimacy may disable the victim from seeking protection.

*Id.* at 18. To further that purpose and because of the potential tragic consequences of domestic violence, the domestic violence statutes should be construed liberally to afford protection to its victims. However, the construction is limited by reasonableness. *Id.*

Despite the liberal construction afforded the statutes, Kentucky courts have consistently held that a typical "boyfriend/girlfriend relationship" is not within its coverage. In *Barnett*, the court began with the proposition that "living together" implied "some sort of cohabitation." *Id.* at 19. It then adopted as guidance, six factors promulgated by the Iowa Supreme Court that a family court should consider in determining whether a couple is or has cohabitated in *State v. Kellogg*, 542 N.W.2d 514 (Iowa 1996).

1. Sexual relations between the parties while sharing the same living quarters.
2. Sharing of income or expenses.
3. Joint use or ownership of property.
4. Whether the parties hold themselves out as husband and wife.
5. The continuity of the relationship.
6. The length of the relationship.

*Id.* at 20. Although the list is not exhaustive, our Supreme Court held that there at a minimum, be proof that "the petitioner seeking a DVO shares or has shared living quarters with the respondent before a finding can be made that the two are an 'unmarried couple' under KRS 403.725." *Id.*

In this case, Howell testified that she had never resided with Rivers, a fact that Rivers confirmed and one confirmed by the remaining witnesses. There was absolutely no evidence that the parties shared financial resources, owned property jointly, or lived in circumstances indicative of cohabitation. Both maintained separate residences, and there was little comingling of personal property. While it may be inferred that the couple engaged in sexual relations during their overnight stays together, there was no direct testimony to that effect by either party. Their relationship was interrupted by periods when they did not date each other and, although they were at one time engaged to be married,

there was no evidence to substantiate the trial court's finding that they had lived together.

■ We conclude that under the facts presented, the family court clearly erred when it granted the DVO against Rivers. The domestic violence statutes as written do not include protection to victims who suffer violence from those in a dating relationship but not cohabitating. Their recourse is limited to the remedies provided by our criminal statutes. This court has previously suggested to the General Assembly that our statutes be expanded to include dating relationships, as have at least twenty-one of our sister states. *Randall*, 223 S.W.3d 121. It has not chosen to amend the statutes; thus, the judiciary remains bound by the current language, including the limitations upon its scope.

Based on the foregoing, the DVO entered against Rivers is reversed, and the case remanded to the Jefferson Family Court with directions to dismiss Howell's petition with prejudice.

ALL CONCUR.