JONES, JUDGE:
James Benson appeals from the amended domestic violence order ("DVO") the Jefferson Circuit Court entered against him in June of 2016. Specifically, Benson challenges the trial court's addition of language prohibiting him from possessing any firearms during the pendency of the amended DVO. Benson claims that the trial court lacked jurisdiction to add the firearms language because the amended DVO was entered more than ten days after the original order. Having carefully reviewed the record in conjunction with the applicable legal authority, we disagree. The trial court retained jurisdiction to correct its own clerical mistake even though more than ten days passed between entry of the original order and entry of the amended order. Accordingly, we AFFIRM.
*161 I. FACTUAL AND PROCEDURAL BACKGROUND
James Benson ("James") and Janet Lively ("Janet") were involved in a romantic relationship over the course of six years. During this time, James was also married to another woman. While the parties disagree on the extent that they resided with each other during their relationship, both James and Janet provided testimony that near the end of their relationship the parties rented an apartment together in which they both resided for at least six to seven weeks prior to their break up in March of 2016.
On March 12, 2016, Janet sought her first emergency protective order ("EPO") against James. In her petition, Janet described an incident that occurred between the parties on March 10, 2016. According to Janet, on this date, James confronted her while she was trying to leave lunch to return to work. She described that James banged on her window, forcefully opened her car door, and placed himself between the door and the car so that Janet could not close the door and leave. Later that same evening, James forced his way into Janet's garage, pulled Janet out of her car, and took her cellular phone away from her. There was a brief scuffle during which Janet was hit in the eye. After Janet started screaming, James left the scene. Janet further described that James sat outside her workplace and sent her numerous threatening messages. She stated that James had guns and she was fearful for her safety.
An emergency order was issued prohibiting James from having any contact with Janet, and a hearing was set to determine whether Janet was entitled to a domestic violence order.[2] Before the matter proceeded to a hearing, the parties, through counsel, came to an agreement that restricted James from having any contact with Janet through any form of communication or third party. Pursuant to the agreement, the parties entered an agreed order dismissing Janet's request for the entry of a DVO.
Following entry of the agreed order, James's behavior continued, leading Janet to request a second EPO on May 3, 2016. Therein, Janet claimed that:
I Janet (pet) and James (resp) formerly lived together as a couple. We currently had a DVO but me and my lawyer agreed to dismiss it and made a contract for him to abide by and he and his lawyer signed saying so. The only reason the DVO was dismissed and the contract was brought in place was due to the fact that we worked at the same industry and our 2 company's work together. I was told and it is also on the calendar from the law court date that if that contract was violated that I had the right to refile. It took him 11 days before he violated it, he has texted me through fake numbers to try and talk to me, he has told me where I am and who I am with, he has now even emailed my lawyer asking him to get us back together. I am very fearful of what he may do he is not in a stable place right now, he has even text me from a fake number pretending to be a friend and was telling me that he is inconsolable and did have the friend follow up and text to try and protect himself. He has also created a fake match.com profile to try and talk to me. He has physically assaulted in the *162 past jerking me out of a car after he broke into my garage. He carries a gun in his truck and carries a knife on his person. He also owns a lot of other firearms. I am terrified that he is going to hurt me or pay someone to do it because he has the money to do so. I am just asking that he stay as far away from me as possible and have absolutely no contact with me what so ever.
On May 3, 2016, Judge McDonald in Jefferson Circuit Court issued an EPO against James which restricted him from being within 500 feet of Janet, restricted him from three locations, and ordered James to surrender any firearms in his possession to the Jefferson County Sheriff's Office. The following day, May 4, 2016, James surrendered four firearms to the sheriff's office.
Next, the matter came for a hearing before Judge Bartholomew. James and Janet both testified. Janet testified about an incident where James stood outside her car window and would not let her leave, followed her to her home, entered into her garage, pulled her out of the car, and threw her phone. Further, Janet testified about James's attempts to contact her via various messaging platforms and an email to her attorney. Janet testified that James is unstable and she is fearful of what he will do to her in the future. James testified that the parties lived together for seven weeks prior to their break up. At the conclusion of the hearing, the court stated that it believed James violated the parties' agreement and declared that it was going to enter a DVO and order the confiscation of James's firearms. Counsel for James indicated that the order should be entered as an interpersonal protective order ("IPO") and argued that confiscation of firearms could not be ordered under an IPO.
Following the hearing, the court filled out and signed a pre-printed Order of Protection form. The top right-hand corner of the form contains five options: domestic violence order, amended domestic violence order, interpersonal protective order, and amended interpersonal protective order. The court checked the box labeled "Domestic Violence Order." On the second page of the form, the court checked a box indicating that James was to be restrained from any contact or communication with Janet. On the next line the court handwrote the number "500" in the blank indicating that James should stay at least 500 feet away from Janet at all times. However, the court failed to check the box indicating that this section was applicable. On the section of the form stating "in order to assist in the eliminating future acts of domestic violence and abuse, dating violence and abuse, stalking or sexual assault" the court stamped the following in black ink: "RESPONDENT IS FURTHER ORDERED NOT TO POSSESS, PURCHASE OBTAIN OR ATTEMPT TO POSSESS, PURCHASE OR OBTAIN A FIREARM DURING THE DURATION OF THIS ORDER." Once again, however, the court failed to check the box indicating this section was applicable.
Along with the preprinted form order, the court also signed a docket calendar entry page. The top of the page lists the case caption, date of the hearing, and a type written description of "domestic and interpersonal violence." The following handwritten notation appears on the top half "IPO-3 yrs. NO! contact at all." The bottom half of the page is filled with what appears to be the court's handwritten notes from the hearing. These primarily summarize Janet's testimony before the court at the hearing. The judge's signature is affixed to the bottom of this sheet. James asserts this signed document is an IPO order that trumps the DVO entered *163 by the court on the same day because this document is almost all handwritten whereas the DVO is simply a series of checked boxes.
Nevertheless, following the hearing, James took the DVO to the sheriff's office to retrieve his surrendered firearms. The sheriff's office indicated that the language in the order was not sufficiently clear and asked for James to bring back something containing clearer language allowing the release of his firearms.
On June 8, 2016, James filed a motion requesting that the court enter a specific order allowing the sheriff's office to return his firearms. The motion was brought in Jefferson District Court before Judge Bowles, who had not presided over the parties' previous matters, but presided over the IPO docket. Judge Bowles declined to exercise jurisdiction because he did not issue the underlying orders. Judge Bowles transferred the case back to Judge Bartholomew.
Next, Janet filed a motion to clarify the DVO. According to Janet, the original DVO should have included a continued seizure of firearms, but the court inadvertently forgot to check the box after placing the stamp on the form.
On June 27, 2016, Judge Bartholomew held a hearing to clarify the court's order. At the hearing, the court explained that the original order should have been entered as a DVO rather than an IPO and that the order would be amended to clarify the court's original intent. The court explained that the parties formerly lived together as an unmarried couple such that entry of a DVO was appropriate and confiscation of firearms was appropriate. The only change made from the original DVO to the amended DVO was that the "box" on the line including the stamped language pertaining to firearms is now "checked."
James filed a motion to alter, amend, or vacate, arguing that the court improperly entered a DVO instead of an IPO and that the court modified a final order more than ten (10) days after its entry in violation of CR 3 59.04 and CR 59.05. James argued that the court lost jurisdiction to modify the order by adding a term that was not included in the original order requiring the confiscation of firearms. The court denied James's motion. In its order, the court explained in pertinent part that:
The original order should have been entered as a DVO rather than an IPO. Although the parties were primarily a dating couple for approximately six years, they lived together for a short time prior to the breaking off of their relationship sometime in March 2016. In her petition, Janet alleged that the parties had lived together for approximately six weeks. James testified that the parties lived together for approximately seven weeks before breaking up in March.
Therefore, the order of June 27, 2016[,] which clarified the May 16, 2016[,] order is proper. The Court order to confiscate included in the subsequent order shall remain in effect.
This appeal followed.
II. ANALYSIS
James makes two main arguments on appeal. First, he argues that the court erred when it entered an amended DVO on June 27, 2016, because it was amended beyond the ten-day time period. Second, he argues that the parties did not meet the criteria for the issuance of a DVO and an IPO should have been entered. We will address these arguments in turn.
*164 First, the court retained jurisdiction under CR 60.01 to amend its clerical error and clarify its May 16, 2016, order. CR 60.01 provides:
Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.
Here, a DVO was entered on May 16, 2016. While the court stamped the prohibitive language ordering confiscation of firearms, the court mistakenly failed to check the appropriate box on the line next to the stamped prohibitive language. It is undisputed that the court did not amend the order within ten days, however, under CR 60.01, a court may amend and correct a clerical mistake at any time because the time restrictions of Rule 59.05 do not apply. Henry Clay Min. Co., Inc. v. V & V Min. Co., Inc. , 742 S.W.2d 566 (Ky. 1987).
Janet's motion did not rely on CR 59.04 or CR 59.05. Rather, her motion was simply made to clarify that the court's failure to check the firearms box was a clerical error. At the hearing, the court was clear that it originally intended this provision to apply, but inadvertently failed to check the appropriate box. The court did not hear any new arguments or consider any new or additional evidence. There were no other changes made to the original DVO other than the court "checking" the "box" next to the stamped section. The court further explained its action in its order denying James's motion to alter, amend, or vacate. Under the circumstances, we cannot conclude that the court abused its discretion in its entry of an amended DVO.
Next, James argues that the parties do not meet the statutory criteria for issuance of a DVO. Specifically, James argues that the parties never lived together and as such the court should have entered an IPO. James does not contest the underlying basis for the court's entry of a DVO, but rather, he seeks an avenue which would permit him to retrieve his firearms. In this regard, he argues that the court should have entered an IPO, and under an IPO, the court would not have been able to order him to surrender his firearms. We disagree. The court properly found that the parties had "lived together" and properly entered a DVO which ordered James to surrender his firearms.
KRS 4 403.750 states that "[a]ny family member or member of an unmarried couple" may file a petition for a protective order under the domestic violence statutes. The definition of "member of an unmarried couple" is contained in KRS 403.720(5) and includes "each member of an unmarried couple which allegedly has a child in common, any children of that couple, or a member of an unmarried couple who are living together or have formerly lived together ." (Emphasis added). "Living together" is not defined in the DVO statutes.
The Kentucky Supreme Court first considered the meaning of "living together" within the context of DVO statutes in Barnett v. Wiley , 103 S.W.3d 17, 18 (Ky. 2003). There, the Court held that in using the term "living together," the General Assembly plainly intended to limit the DVO statutes to those cohabitating in some fashion. Id. at 19. Accordingly, the Court held that "there must be, at a minimum, proof that *165 the petitioner seeking a DVO shares or has shared living quarters with the respondent before a finding can be made that the two are an 'unmarried couple' under [ KRS 403.750 ]."[5] Id. at 20-21.
Instead of defining a precise test for determining cohabitation, the Barnett court identified six indicia of cohabitation: (1) sexual relations between the parties while sharing the same living quarters; (2) sharing of income or expenses; (3) joint use or ownership of property; (4) whether the parties hold themselves out as husband and wife; (5) the continuity of the relationship; and (6) the length of the relationship. Id. at 20. The Court explained that lower courts should appropriately consider these six factors when making "a factual determination as to whether a couple is cohabiting under the umbrella of chapter 236." Id. Although the list is not exhaustive, our Supreme Court held that at a minimum, there must be proof that "the petitioner seeking a DVO shares or has shared living quarters with the respondent before a finding can be made that the two are an 'unmarried couple' under [ KRS 403.750 ]." Id.
Here, there was sufficient proof that James and Janet lived together to support the court's finding that the two were an "unmarried couple" under KRS 403.725. First, Janet's petitions provided that the parties lived together for six weeks. Next, James's own testimony revealed that the parties lived together for a period of at least seven weeks. Additionally, the parties were in an intimate sexual relationship over the course of six years. James points to the fact that he was married during the pendency of their relationship and during the time that they lived together. When a party steps outside of his or her marriage and establishes a relationship with another person and cohabitates with that person, the underlying marriage cannot act as a shield to a DVO.
Further, James's argument that the DVO was improper because he and Janet "never lived together in any permanent capacity" is unavailing. The statute contains no minimum period of time the couple must have cohabitated before there is standing to seek a DVO. See McIntosh v. Campbell , No. 2014-CA-002084-ME, 2015 WL 3826246, at *3 (Ky. App. June 19, 2015).[6] Some couples may live together for years before an act of domestic violence occurs. Other couples might experience domestic violence in the first few days or weeks of cohabitation. Id. Here, the parties' seven-week period of cohabitation in combination with their six year intimate relationship was sufficient to support the court's finding that they were members of an unmarried couple.
Next, James's arguments under federal law do not provide him with any relief. Under 18 U.S.C. 7 § 922(g)(8), only a person who has been restrained by a court order from harassing, stalking or threatening an "intimate partner" is prohibited from possessing firearms. An "intimate partner" is defined as "one who cohabitates or has cohabited with the person." See 18 U.S.C. § 922(a)(32). "Cohabitates" implies a sexual relationship. See WEBSTER'S II NEW COLLEGE DICTIONARY 218 (2001).
James concedes that the issuance of DVO coupled with 18 U.S.C. § 922(g)(8) forces an intimate partner to surrender *166 firearms. In contrast, he argues that the IPO statute does not explicitly empower a trial court to order a party to surrender his firearms. James argues that 18 U.S.C. § 922(g)(8) does not apply to the issuance of an IPO because of the lack of requirement of cohabitation.
Thus, James's overarching argument is that the distinction between issuance of a DVO versus an IPO is critical due to the court's authority to order him to surrender his firearms in each instance. Because, here, the court properly found that the parties lived together and that entry of a DVO was proper, we need not reach James's assertion that under an IPO a court cannot order surrender of firearms.[8]
KRS 403.740(1)(b) permits the trial court the discretion to enter a DVO that directs or prohibits actions which the court believes will be of assistance in eliminating future acts of domestic violence and abuse. Here, the trial court found that prohibiting James from possessing firearms and weapons was necessary to assist in eliminating future acts of domestic violence and abuse.
In sum, the court's entry of a DVO against James was supported by substantial evidence on the record: (1) the parties were in an intimate relationship over the course of six years; (2) James testified that the parties lived together for a period of at least seven weeks; (3) James continually stalked Janet, reporting to her that he knows where she is and who she is with; (4) James followed Janet to her home, broke into her garage, pulled her out of her car, broke her phone, and physically assaulted her; (5) James texted Janet using other people's phone numbers, set up a fake Match.com profile to attempt to talk to her, and emailed her attorney to ask him to help the parties get back together; and (6) Janet is fearful that James will harm her.
While this case was certainly complicated by the entry of two orders and by the court's failure to check a box in its original order, the court did not abuse its discretion in correcting its own error in the original order through entry of an amended DVO.
III. CONCLUSION
For these reasons, we affirm the Jefferson Circuit Court's denial of James's motion to alter, amend or vacate the court's amended DVO, which was properly entered against James.
ALL CONCUR.

According to James, he never received a copy of the EPO. Instead, he claims that he received a summons to appear for a hearing on a later date. He asserts that the summons indicated that the EPO was denied on the basis that it failed to state an act or threat of domestic violence. This discrepancy, while confusing, is not pertinent to the matter we are asked to consider as part of the current appeal.

The language of KRS 403.750 was previously found in KRS 403.725 which was repealed and reenacted effective January 1, 2016.

We cite this unpublished opinion as persuasive, not binding, authority. See CR 76.28(4)(c).

However, similar to the DVO statute, the IPO statute, KRS 456.060, does allow a trial court to direct or prohibit other actions that the court believes would "be of assistance in eliminating future acts of dating violence and abuse, stalking, or sexual assault...."