RENDERED: SEPTEMBER 30, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0640-ME

ROBERT D. JONES                                            APPELLANT


v.                          APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE DENISE D. BROWN, JUDGE
ACTION NO. 21-D-501112-001


KELLI LYNNE SCHMIDT AND L.S.,
A MINOR CHILD                                      APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, DIXON, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE: Robert D. Jones appeals from an amended domestic violence order (DVO) granted by the Jefferson Family Court on behalf of Kelli Lynne Schmidt and her minor child L.S. Jones argues the family court abused its discretion in refusing to continue the domestic violence hearing for a longer period of time than was granted and that the family court lacked jurisdiction to enter its amended DVO. We affirm.

At the time of the alleged incident of domestic violence on April 11, 2021, Jones and Kelli had been in a relationship for a little over two years. They had previously cohabitated but had not lived together since September 2020. Jones and Kelli have no children together. Kelli and Michael Schmidt are divorced and L.S. is their child.

On April 16, 2021, Kelli filed a Petition/Motion for Order of Protection on behalf of herself and L.S. The petition alleges that, on April 11, 2021:

> Respondent showed up at my house, physically assaulted me. Pulled my hair, punched my face. Refused to let me leave for several hours. Threatened me with a gun. Respondent is currently in custody. I do not feel safe around him and do not want him to contact me or my child [L.S.].

On page two of the petition form, the box for "currently or previously in a dating relationship" was checked instead of the box for "unmarried, currently or formerly living together[.]" Based upon that information, on April 16, 2021, was granted an "Order of Protection" with the box for "Interpersonal Protective Order" (IPO) checked instead of the box for "Emergency Protective Order."

Jones was served on April 16, 2021, while he was in custody following his arrest on charges of burglary first degree (Kentucky Revised Statutes (KRS) 511.020), unlawful imprisonment first degree (KRS 509.020), wanton endangerment first degree (KRS 508.060), and assault fourth degree (KRS

-2-

508.030). Those criminal charges all stem from the same alleged incident of domestic abuse.

On April 27, 2021, the day before the scheduled hearing on the petition, Jones filed a motion to dismiss or, in the alternative, to continue the hearing. That motion stated that Jones had not been released from jail until April 25, 2021, and therefore had insufficient time to prepare. The motion also set forth the fact that the pending criminal charges implicated Jones's Fifth Amendment right against self-incrimination and put him in "an impossible quandary" regarding testifying at the scheduled hearing "in the face of pending criminal charges."

On April 28, 2021, the parties and counsel appeared via Zoom. In the interim, Michael had filed a separate petition on behalf of L.S. and that petition appeared on the docket alongside Kelli's petition. Neither Michael nor L.S. had been present during the alleged incident. The family court heard Jones's motions and while it considered continuing the matter for more than one week, it was faced with not only its own scheduling limitations (its DVO docket is confined to Wednesdays) but with the calendar conflicts posed by four attorneys, two of whom represented Jones. The family court would not consider a continuance past the month of May and cited Kelli's right to have the matter heard within fourteen days unless she agreed otherwise. While Jones's counsel wanted the hearing to occur after Jones's upcoming probable cause hearing in the criminal matter which was

set for May 19, 2021, that date was unworkable for all counsel. Ultimately, the family court granted Jones a continuance, but only until May 5, 2021.

At the beginning of the DVO hearing on May 5, 2021, Michael's counsel moved to withdraw due to a conflict related to a witness identified in pre-hearing compliance that she represented and requested a continuance.

Jones's counsel objected to "bifurcating" the petitions and conducting two hearings on the same facts. The family court noted that the petitions were "two separate cases," but that L.S., who was not present during the incident, "would be protected" if an order was granted on behalf of Kelli. The family court granted Michael a continuance until June 9, 2021.

The family court then began the hearing and Kelli testified regarding the incident and the abuse she had suffered. Kelli testified that Jones came to her home and barged in following an argument over the phone, grabbed her hair, and threw her to the floor. He physically stopped her from calling 911, put a gun to her head, and threatened to "blow her brains out." Kelli explained that Jones then forced her into the basement, she fell down the stairs, Jones confined her in a basement room for three hours, and during that time repeatedly assaulted her, body-slammed her onto the floor, and struck her in the face. Included in the evidence presented were numerous photographs showing bruising to Kelli's face, jaw, neck, hand, wrist, chest, and forearm.

Also admitted were numerous text messages from Jones to Schmidt expressing remorse for the assault including one stating, "I'm so fucking sorry about your face Kelli." Jones did not testify.

On May 5, 2021, the family court found in favor of Kelli and entered an AOC form 275.3 "Order of Protection" effective for three years. This same form is utilized by our courts regardless of whether they are acting pursuant to KRS 403.715 *et. seq.* (DVOs) or KRS 456.030 *et. seq.* (IPOs). At the top of this form there are four boxes beside the categories of orders listed for which the form may be applicable. These four categories are: (1) Domestic Violence Order; (2) Amended Domestic Violence Order; (3) Interpersonal Protective Order; or (4) Amended Interpersonal Protective Order. None of the four boxes were checked. Also, under the section for the Respondent's "Relationship to Petitioner," there is no indication given whether Jones was related to Schmidt due to being "currently or formerly living together" or "currently or previously in a dating relationship[.]" While none of the categories were checked, the form specifically indicates that the family court determined "[t]hat it has jurisdiction over the parties and subject matter[.]"

On the second page of the form, any doubt as to whether the family court found "domestic violence and abuse" or "dating violence and abuse" is dispelled by the family court marking an "X" in the two boxes finding: (1) "For

the Petitioner against the Respondent in that it was established, by a preponderance of the evidence that an act(s) of," and (2) "domestic violence and abuse . . . has occurred and may again occur[.]"

The family court supplemented the AOC order with additional handwritten and signed findings on the accompanying docket sheet:

> Proof heard; Court finds by a preponderance of the evidence that an act of Domestic Violence has occurred and is likely to occur again in future. Respondent came to Petitioner's home after her refusal to respond to his calls or text messages. Respondent prevented Petitioner from leaving her home; took her weapon, phone and watch. He prevented Petitioner from leaving her home or calling the police. Respondent repeatedly assaulted Petitioner by striking her about her face & body with his hands and fists; body slammed her to the floor over a 5 hour period. Respondent continued his assault after leaving the basement by grabbing her around her neck. Respondent punched Petitioner on the left side of her face which resulted in immediate swelling. Respondent continually viewed Pet's phone information during the time he was in the home. DVO entered for 3 yrs. MH Eval & BIP classes ordered. SC Date 10/20/2021 @ 9 00 AM[.]

For purposes of this appeal, it is important to note that among the family court's handwritten entries is, "DVO entered for 3 yrs," which further clarifies that the family court found that the parties' relationship fell under the factual auspices of a DVO given their prior cohabitation, rather than an IPO based only upon a dating relationship.

-6-

On May 15, 2021, Kelli filed a motion to alter or amend the DVO to include L.S. Kelli's motion was noticed for the family court's DVO motion hour on May 26, 2021. Counsel for Jones and Kelli communicated with one another, and an agreed order was entered by the parties allowing for the addition of L.S. to the order. The parties' agreed order was signed by the family court on May 26, 2021, and entered by the clerk on May 27, 2021.

Also on May 27, 2021, the family court entered an amended AOC form 275.3 "Order of Protection." This amended order substantively differed from the original in that the minor child, L.S., was added as a "Minor on whose behalf Petition was filed[.]" The amended order, unlike the original, also now had the boxes checked for "Amended Domestic Violence Order" and "unmarried, currently or formerly living together."

Jones was indicted on each of the original charged offenses by the Jefferson County Grand Jury on June 29, 2021. At the time of this Opinion, the prosecution of those charges continues, and he awaits trial.

Jones makes two arguments on appeal. The first is that the family court abused its discretion in refusing to grant him a longer continuance which prejudiced his ability to mount a defense. The Kentucky Supreme Court set forth both the standard of review and factors to be considered in such circumstances within the context of a criminal proceeding in *Snodgrass v. Commonwealth*, 814

S.W.2d 579, 581 (Ky. 1991), *overruled on other grounds by Lawson v.*

*Commonwealth*, 53 S.W.3d 534 (Ky. 2001):

> [Kentucky Rules of Criminal Procedure] 9.04 allows a trial to be postponed upon a showing of sufficient cause. The decision to delay trial rests solely within the court's discretion. *Williams v. Commonwealth*, Ky., 644 S.W.2d 335 (1982); *Cornwell v. Commonwealth*, Ky., 523 S.W.2d 224 (1975). Whether a continuance is appropriate in a particular case depends upon the unique facts and circumstances of that case. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964). Factors the trial court is to consider in exercising its discretion are: length of delay; previous continuances; inconvenience to litigants, witnesses, counsel and the court; whether the delay is purposeful or is caused by the accused; availability of other competent counsel; complexity of the case; and whether denying the continuance will lead to identifiable prejudice. *Wilson v. Mintzes*, 761 F.2d 275, 281 (6th Cir. 1985).

An abuse of the court's discretion only occurs if its ruling is

"arbitrary, unreasonable, unfair, or unsupported by sound legal principles."

*Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

The family court did grant Jones a continuance albeit for only seven

days. The family court declined to grant a longer continuance due to scheduling

difficulties and Kelli's right to receive a hearing within two weeks. Therefore, the

issue on appeal is whether the length of the continuance was sufficient. The record

of the April 28, 2021, hearing shows that Jones's concern in seeking a continuance

was to obtain a date for the hearing that would be after the date of his upcoming

-8-

probable cause hearing in the criminal action set for May 19, 2021. In his brief, Jones explains: "the Appellant has always contended he simply needed additional time to prepare and decide what course he would choose (i.e., to partially waive his right to silence and testify in these proceedings; or to remain silent and potentially forego a complete defense to the protective order claims)."

When the May 5, 2021, hearing began, Jones did *not* renew his prior motion to continue the hearing or offer any new reason to postpone the hearing on Kelli's petition despite the fact that a continuance was granted on Michael's petition. Most importantly, other than apparently not wanting Jones to waive his Fifth Amendment rights and testify before the date of his probable cause hearing, Jones's counsel neither described any other reason to further postpone the hearing nor articulated any other alleged form of "identifiable prejudice." *Snodgrass*, 814 S.W.2d at 581.

Jones's concern regarding waiving his Fifth Amendment rights in the course of the DVO hearing should have been partially ameliorated by KRS 403.745(6) which states: "Testimony offered by an adverse party in a hearing ordered pursuant to KRS 403.730 shall not be admissible in any criminal proceeding involving the same parties, except for purposes of impeachment." Therefore, Jones's argument regarding the likelihood of his testimony being used against him in ongoing criminal proceedings must be tempered by the fact that a

specific statute has been crafted to allow him to testify in his own defense at a DVO hearing without fear, save only that he later testifies consistently with his prior testimony.

The family court was appropriately concerned with following the fourteen-day limitation on continuing this domestic violence case. This limitation is found in both KRS 403.735(2)(a) (for DVOs) and KRS 456.050(2)(a) (for IPOs) which state: "If service has not been made on the respondent at least seventy-two (72) hours prior to the scheduled hearing, the court may continue the hearing no more than fourteen (14) days in the future." We note that Jones, having been served twelve days prior to the rescheduled hearing, was not entitled to a continuance under this provision.

Additionally, our Court has previously held that conducting timely hearings is essential to the purpose of these statutes. As stated in *Hohman v. Dery*, 371 S.W.3d 780 (Ky.App. 2012):

> We are cognizant that the purpose of Kentucky's domestic violence statutes is "[t]o allow persons who are victims of domestic violence and abuse to obtain effective, short-term protection against further violence and abuse in order that their lives will be as secure and as uninterrupted as possible[.]" KRS 403.715(1). Accordingly, we agree with the trial court that the timely holding the domestic violence hearing is essential to the purpose of the statutes.

*Id.* at 784.

-10-

Jones's reliance on the opinion in *Lehmann v. Gibson*, 482 S.W.3d 375 (Ky. 2016), is not persuasive. In *Lehmann*, the Kentucky Supreme Court set forth the factors a trial court should consider when faced with a request to delay or stay civil proceedings when a related criminal action was also pending, stating:

> We find it unnecessary to provide an exhaustive list of factors for a trial court's consideration, but we find these to be strong guidance:
>
> (1) the extent to which the evidentiary material in the civil and criminal cases overlap; (2) the status of the criminal proceeding; (3) the interests of any parties in staying the civil proceeding; (4) the prejudice to any parties from staying the civil proceeding; (5) the interests of persons that are not parties to the litigation; (6) court convenience; and (7) the public interest in the pending civil and criminal actions.

*Id.* at 384 (footnote omitted).

These factors seem consistent with those set forth in *Snodgrass*, *supra*. However, in *Lehmann*, the Supreme Court's concern was not for the timely holding of DVO hearings, but the fear that "civil discovery will jeopardize the integrity of the criminal proceeding[.]" 482 S.W.3d at 384. Ultimately, the Court found that it was "unable to hold the trial court abused its discretion in staying civil discovery pending the completion of Lehmann's criminal trial" utilizing the same abuse of discretion standard that we apply here. *Id*. at 386.

Perhaps the family court could have maintained a temporary order of protection and delayed the hearing until after Jones's probable cause hearing.

-11-

However, under all the circumstances, including the purpose of our DVO statutes, we believe the family court did not abuse its discretion in denying Jones a longer continuance.

Additionally, Jones has failed to plead or establish prejudice. The family court set no limitations on the presentation of Jones's testimony or other evidence. The court provided Jones with the opportunity to testify and offer witnesses, to cross-examine Kelli under oath, and to present any other evidence he may have chosen. The record reflects that Jones's counsel acted thoroughly, professionally, and competently as witnessed by the vigorous and lengthy cross-examination of Kelli. In *Lynch v. Lynch*, 737 S.W.2d 184, 186 (Ky.App. 1987), this Court made it clear that "[d]ue process requires, at the minimum, that each party be given a meaningful opportunity to be heard." In *Holt v. Holt*, 458 S.W.3d 806 (Ky.App. 2015), this Court explained the phrase "meaningful opportunity to be heard" as the court's permitting "each party to present evidence and give sworn testimony before making a decision." *Id.* at 813. Jones could have testified at the DVO hearing; he only chose not to in apparent deference to his concern that his DVO testimony could subject his later testimony at the probable cause hearing to impeachment. Such strategy, even under the auspices of his Fifth Amendment rights, is not a "prejudice" in the sense of deprivation of due process.

-12-

We find that Jones was given a meaningful hearing as required by statute and in accordance with due process prior to entry of the DVO against him. Under the totality of the circumstance, his desire to decide, at a later date, whether or not to testify in his own defense at the DVO hearing did not constitute a "prejudice" necessitating the family court to grant a longer continuance. The family court's decision to deny a longer continuance was fair and equitable under the circumstances.

Jones's second argument is that the family court lost subject matter jurisdiction prior to its entry of the amended DVO which, according to Jones, impermissibly added "the missing findings regarding the relationship of the parties."

This argument's first prong is that the family court did not, in its original order of protection, make the requisite finding that the parties had previously cohabitated. We disagree.

Under KRS 456.030(1)(a) a petition for an IPO may be filed by "a victim of dating violence and abuse[.]" However, under KRS 403.750(2)(a) "[a]ny family member or member of an unmarried couple" may file a petition for a domestic violence protective order. The IPO and DVO statutes are remarkably similar but for the element of current or former cohabitation. The definition of "member of an unmarried couple" is contained in KRS 403.720(6) and includes

"each member of an unmarried couple which allegedly has a child in common, any children of that couple, or *a member of an unmarried couple who are living together or have formerly lived together*[.]" (Emphasis added.) "Living together" is not defined in the DVO statutes, however, the Kentucky Supreme Court previously considered the meaning of "living together" within the DVO statute in *Barnett v. Wiley*, 103 S.W.3d 17, 18 (Ky. 2003). There, the Court held that in using the term "living together," the legislature intended to limit the DVO statutes to those cohabitating in some fashion. *Id.* at 19. Accordingly, the Court held that "there must be, at a minimum, proof that the petitioner seeking a DVO shares or has shared living quarters with the respondent before a finding can be made that the two are an 'unmarried couple[.]'" *Id.* at 20. There is no minimum period of time an unmarried couple must have cohabitated before there is standing to seek a DVO. *Benson v. Lively*, 544 S.W.3d 159 (Ky.App. 2018).

During the DVO hearing Kelli testified under oath and on the record that she and Jones had previously cohabitated. On cross-examination, Jones's counsel asked Kelli, "[y]ou all lived together at some point is that correct?" Later, Kelli explained that when she filled out her petition she thought "currently or previously in a dating relationship" was a more appropriate box to mark on the AOC petition form than "unmarried, currently or formerly living together." The

-14-

parties had continued their relationship despite not living together for at least eight months.

When the family court interrupted this line of questioning noting that Kelli had already testified that she and Jones had lived together, Jones's counsel asserted that continuing questioning was being posed regarding Kelli's "truth and veracity" because her petition had not admitted their prior living arrangement. Jones's counsel asked Kelli again, "[t]here is no question that you had lived together?" Therefore, it is evident that Jones's counsel was not questioning whether or not Kelli might be entitled to an IPO instead of DVO, or whether the family court had jurisdiction over the parties.

Having fully reviewed the record, every party to the DVO hearing was aware, and conceded, that the parties had previously lived together. As to the family court's written findings contained in the standardized form AOC-275.3 entered on May 5, 2021, we have already noted that the family court checked two boxes on the AOC form indicating that it had found: (1) "For the Petitioner against the Respondent in that it was established, by a preponderance of the evidence that an act(s) of," and (2) "domestic violence and abuse . . . has occurred and may again occur[.]" Additionally, the family court's handwritten entries on its docket sheet reference not only "domestic violence" but also "DVO." While the family court could have been more cautious in marking all the boxes offered on the AOC form

275.3, we are confident that between what was indicated on the form and on the court's docket sheet, together with Kelli's testimony and the court's own statements on the record, that the family court made the findings that Kelli and Jones had previously cohabitated, Kelli had standing to seek a DVO under Kentucky's domestic violence statutes, and the family court had jurisdiction over the parties. The findings of record are sufficient for this Court to determine the basis for each of the family court's rulings and to conduct a meaningful appellate review of the sufficiency of the evidence presented.

The last component of Jones's second argument is the assertion that the family court was not permitted to enter the amended order of May 27, 2021, since it was divested of its jurisdiction ten days after the entry of its original May 5, 2021, order. Such argument depends upon this Court agreeing that the family court's original ruling was deficient as to the requirement that it make a finding as to the relationship of the parties necessary for entry of either a DVO or IPO. Since we have ruled that the family court *did* make findings, supported by substantial evidence, that the parties had previously cohabitated and that a DVO was therefore appropriate, we need not rule on this secondary argument. However, even if Jones's allegations were true, we have noted that the family court's jurisdiction continued based upon Kelli's timely filing of her motion to amend on May 15, 2021, which was within ten days of the entry of the original DVO. While changes

made by the family court as found in the amended DVO went beyond merely adding L.S. and included checking the additional and correct boxes on the AOC form, the family court still retained jurisdiction under Rules of Civil Procedure (CR) 60.01 to amend its clerical errors and otherwise clarify its May 5, 2021, order. CR 60.01 provides:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court *at any time of its own initiative* or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

(Emphasis added.)

The court did not hear any new arguments or consider any new or additional evidence prior to entering its amended order. At the hearing, the court was clear that it understood that Kelli and Jones had previously lived together. Therefore, it was also clear that the matter was appropriately addressed under our domestic violence statute. There were no other changes made to the original DVO other than the family court "checking the boxes" next to all the proper sections and, under the totality of the foregoing circumstances including the court's statements of record, we cannot conclude that the family court abused its discretion in its entry of the amended DVO. *See Benson*, 544 S.W.3d at 164.

There is substantial evidence in the record before us that Jones committed acts of domestic violence against Kelli and it was undisputed that they had lived together. We cannot conclude that the family court's determination to only grant a one-week continuance was an abuse of discretion or that its findings were clearly erroneous.

Accordingly, the order of the Jefferson Family Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

F. Todd Lewis
Louisville, Kentucky

BRIEF FOR APPELLEE:

Mark G. Hall
Louisville, Kentucky