James WRIGHT, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2011–SC–000191–MR.

Supreme Court of Kentucky.

Oct. 25, 2012.

As Modified on Denial of Rehearing Feb. 21, 2013.

Thomas More Ransdell, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Bryan Darwin Morrow, Office of the Attorney General, Frankfort, KY, for appellee.

Opinion of the Court by Justice SCOTT.

A Campbell Circuit Court jury found Appellant, James M. Wright, guilty of first-degree fleeing or evading police,

fourth-degree assault, possession of marijuana, and being a first-degree persistent felony offender (PFO). For these crimes, Appellant received a sentence of twenty years' imprisonment and was fined $600. He now appeals as a matter of right, Ky. Const. § 110(2)(b), alleging that: (1) the trial court issued erroneous jury instructions on the fleeing or evading police charge, (2) the trial court erred by ordering the imposition of fines after previously finding Appellant to be indigent, (3) his sentence of twenty years' imprisonment constitutes cruel and unusual punishment, (4) the trial court erred by denying his motion for a directed verdict, (5) the Commonwealth failed to disclose a material witness in violation of discovery rules and his constitutional right to due process, and (6) the trial court erred by denying his motion for a continuance.

Having reviewed the record, we hold that the trial court's jury instructions on the fleeing or evading charge were erroneous. Thus, we reverse Appellant's convictions and sentences for first-degree fleeing or evading and first-degree PFO and remand this matter to the trial court for further proceedings consistent with this opinion. We further hold that the trial court erred by imposing fines upon Appellant and therefore vacate those portions of his sentences for fourth-degree assault and possession of marijuana imposing fines.

## I. BACKGROUND

Appellant and Lawanna Covington began dating in May 2008. One month later, Appellant moved into Covington's apartment. Although their relationship had its share of problems, Appellant and Covington were allegedly still living together as of March 2010.

The night of March 10, 2010, Covington spent some time at Stacie Jenkins's apartment and eventually fell asleep. When she woke up in the early-morning hours of March 11, she decided to walk back to the apartment she shared with Appellant and asked Jenkins to accompany her. While walking to the apartment, Appellant pulled up in his vehicle, exited, and began arguing with Covington.

During the argument, Covington realized she had left some of her belongings at Jenkins's apartment. Covington and Jenkins then returned to Jenkins's apartment and Appellant followed. Covington and Jenkins went inside, where Covington retrieved her belongings and left; Jenkins, however, remained in her apartment. Shortly thereafter, the argument between Appellant and Covington escalated and became physical. Jenkins heard the commotion, went back outside, and found Appellant on top of Covington.

When Jenkins threatened to call the police to report the assault, Covington was able to break free from Appellant's grasp. Jenkins then returned to her apartment and immediately called 911. Meanwhile, Covington placed her own emergency phone call while running down the street. Appellant, however, quickly caught up to her, snatched the phone from her hand, and headed toward a nearby apartment building. Officer Brady Buemi arrived on the scene around this time.

Covington testified that when Buemi exited his vehicle, she identified Appellant as her assailant and Buemi immediately ordered him to stop. Appellant, however, continued toward an apartment building. Buemi followed Appellant into the building and, as he entered, heard Appellant exiting through the back door. Shortly thereafter, another officer found Appellant hiding behind some nearby bushes. The officer arrested Appellant and found Covington's cell phone and a bag of marijuana on his person.

A Campbell County Grand Jury indicted Appellant for first-degree fleeing or evading, fourth-degree assault, possession of marijuana, and first-degree PFO.[1] A jury subsequently found him guilty of all charges and recommended he serve a total sentence of twenty years in prison and pay $600 in fines. The trial court adopted these recommendations and this appeal followed.[2]

## II. ANALYSIS

### A. Jury Instructions

Appellant asserts that the trial court erroneously instructed the jury on the fleeing or evading charge. Specifically, he contends (1) that the instruction is unconstitutionally vague in that it does not adequately define "living together" and (2) that it essentially instructed the jury that Appellant and Covington *were* living together, thereby taking that determination away from the jury. We agree that the

trial court's instruction was erroneous, but for a different reason.

■■■ "Kentucky has long employed the use of 'bare bones' jury instructions that avoid an abundance of detail, providing only a framework of the applicable legal principles." *Hilsmeier v. Chapman*, 192 S.W.3d 340, 344 (Ky.2006). At a minimum, however, "[i]nstructions must be based upon the evidence and they must properly and intelligibly state the law." *Howard v. Commonwealth*, 618 S.W.2d 177, 178 (Ky.1981). Their purpose "is ... to state what the jury must believe from the evidence ... in order to return a verdict in favor of the party who bears the burden of proof." *Webster v. Commonwealth*, 508 S.W.2d 33, 36 (Ky.1974). In criminal cases, instructions "should conform to the language of the statute," *Parks v. Commonwealth*, 192 S.W.3d 318, 326 (Ky.2006), and "[i]t is left to the lawyers to

---

1. Appellant's prior felony convictions were for aggravated assault, robbery, and third-degree assault.

2. In addition to the issues discussed below, Appellant asserts the trial court erred in failing to grant his motion for a directed verdict. He claims that he did not knowingly disobey an order to stop and that he could not have committed an act of domestic violence, as he and Covington were not members of an unmarried couple. We dispose of this matter summarily, as it is without merit. This Court outlined the standard we use in evaluating a motion for a directed verdict in *Commonwealth v. Benham*:

> [T]he trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

816 S.W.2d 186, 187 (Ky.1991). For our purposes, we review the trial court's ruling on Appellant's motion as follows: " 'If under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty, he is not entitled to a directed verdict of acquittal.' " *Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky.1983) (quoting *Trowel v. Commonwealth*, 550 S.W.2d 530, 533 (Ky. 1977)).

Here, the trial court properly denied Appellant's motion. It would not be clearly unreasonable for a jury to find Appellant guilty under the evidence adduced. There was, in fact, *ample* evidence presented at trial. Officer Buemi and Covington both testified that Appellant was given an order to stop and immediately started running. Furthermore, Officer Buemi testified that *Appellant* informed him that Covington was his girlfriend and that the two had formerly lived together. As will be discussed, infra, in Section II. A. 1., the trial court erred in its instructions to the jury; however, had the instructions been correct, there was extensive evidence allowing a reasonable jury to find Appellant guilty. Therefore, the trial court did not err in denying Appellant's motion for a directed verdict.

'flesh out' the 'bare bones' in closing argument." *Id.*

Having reviewed the instructions, we hold that the trial court erred when it did not conform its instructions to the applicable statutory provisions. Given this error, we remand the case for retrial on Appellant's fleeing or evading and first-degree PFO charges. We include a model instruction for the trial court's benefit on remand.

### 1. *Instruction Error*

■ Under KRS 520.095, a person is guilty of fleeing or evading in the first degree "[w]hen, as a pedestrian, and with the intent to elude or flee, the person knowingly or wantonly disobeys an order to stop, given by a person recognized to be a peace officer, and ... [t]he person is fleeing immediately after committing an act of domestic violence as defined in KRS 403.720." KRS 403.720(1) defines an act of domestic violence as an "assault ... between family members or members of an unmarried couple." Further, " '[m]ember of an unmarried couple' means each member of an unmarried couple which allegedly has a child in common, any children of that couple, or a member of an unmarried couple who are living together or have formerly lived together." KRS 403.720(4).

The pertinent instructions tendered to the jury read:

### INSTRUCTION NO. 3

For the purpose of these Instructions, the following words or terms have the following meanings:

. . . .

**Domestic violence**—means physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault between family members or members of an unmarried couple.

**Living together**—to determine whether persons are living together or formerly lived together, the following factors may be considered:

1. Sexual relations between the parties while sharing the same living quarters.
2. Sharing of income or expenses.
3. Joint use or ownership of property.
4. Whether the parties hold themselves out as husband and wife.
5. The continuity of the relationship.
6. The length of the relationship.

. . . .

### INSTRUCTION NO. 5

You will find the Defendant, James M. Wright, guilty of First–Degree Fleeing or Evading under this Instruction, if and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about March 11, 2010, and before the finding of an indictment herein, he knowingly disobeyed a direction to stop, which direction was given by a person who he recognized to be a police officer;

AND

B. That he did so with the intent to flee or elude;

AND

C. That he was fleeing immediately after committing an act of domestic violence, specifically a physical assault on Lawanna Covington, who he has *shared living quarters with.*

(Emphasis added.) Thus, under this instruction, the jury was required to find

Appellant guilty of fleeing or evading if it determined (among other things) that he and Covington had "*shared living quarters.*" (Emphasis added). No mention was made of the statutory term, "unmarried couple." In addition, the trial court included in its definitional instruction factors we set out in *Barnett v. Wiley,* 103 S.W.3d 17, 19 (Ky.2003) in an attempt to aid the jury in its determination.[3]

 Clearly, these instructions were at odds with KRS 520.095, which requires the jury to find beyond a reasonable doubt that Appellant was "fleeing immediately after committing an act of domestic violence as defined in KRS 403.720."

Under the statute, the jury was required to make two determinations to find that Appellant committed an act of domestic violence under the facts of this case. *See* KRS 403.720. First, the jury must have found Appellant committed a particular act of violence, as enumerated by KRS 403.270.[4] Second, it must have found that Appellant and Covington were members of an "unmarried couple." [5]

We conclude that the first requirement was met, as the jury found that Appellant committed an assault against Covington. However, we cannot say with reasonable certainty that the jury found that Appellant and Covington were an "unmarried couple" because no definition of "unmarried couple" was included in the instructions, even though this is a statutorily-defined phrase.

 Absent a finding that the participants in an alleged domestic altercation were an unmarried couple, mere roommates could be charged with having domestically abused one another. This is clearly outside the boundaries of the statute. As former-Justice Keller and Professor Graham's treatise on Kentucky domestic relations law, notes:

> [Courts] should focus on the *purpose of the statute* rather than technicalities. The point of domestic violence legislation is to protect victims from harm caused by the persons whose *intimate physical relationship to the victim increases the danger of harm . . . .*"

Louise E. Graham and James E. Keller, 15 *Kentucky Practice: Domestic Relations*

---

3. These factors were identified for trial courts in the determination of whether to grant a Domestic Violence Order (DVO)—not by juries in determining whether two individuals are members of an unmarried couple in a criminal trial. *See Barnett,* 103 S.W.3d at 19.

While the inclusion of the *Barnett* factors in the jury instructions was inappropriate, we note that they were included at Appellant's request. Therefore, Appellant invited any error which might have resulted solely from their inclusion. *Quisenberry v. Commonwealth,* 336 S.W.3d 19, 37 (Ky.2011) ("Generally, a party is estopped from asserting an invited error on appeal. *Gray v. Commonwealth,* 203 S.W.3d 679 (Ky.2006)."). This error, however, is not the error on which we reverse; rather, the error on which we reverse is that the jury instructions did not conform to the statutory language as discussed herein.

4. In order to have committed an act of violence under the statute, Appellant must have caused "physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault. . . ." KRS 403.720(1).

5. In order for the jury to make the determination that Appellant and Covington were an "unmarried couple," it must have found that Appellant and Covington were: an unmarried couple who are living together or have formerly lived together. *See* KRS 403.270(4). The term "unmarried couple" has a specific meaning under the statute and was entirely omitted from the jury instructions. Included instead was the term "living together." This latter term is commonly understood, and, unlike the former, is not defined by the statute.

*Law,* § 5:1 at 236 (3d ed. West 2008) (emphasis added).

Moreover, in *Barnett,* we quoted with approval the Iowa Supreme Court's analysis of jury instructions much like those in the case at bar:

> Relying on dictionary definitions of the term, as well as Iowa case law interpreting it within the context of divorce law, the *Kellogg* court held that the trial court's instruction was too broad:
>
>> As instructed by the court that "cohabiting" means "dwelling or living together in the same place," a jury finding that persons were mere roommates or lived in the same apartment building would be sufficient to support a conviction. We do not find any statutory evidence that the legislature intended this breadth of application from its enactment of the Domestic Abuse Act.
>
> *[Iowa v.] Kellogg,* 542 N.W.2d [514,] 518 [ (Iowa 1996) ].

*Barnett,* 103 S.W.3d at 19–20. As in *Kellogg,* the jury instructions in Appellant's case were simply too broad. The jury was not instructed to find that he and Covington were members of an unmarried couple. Thus, the tendered instructions erroneously failed to require the correct findings.

 Furthermore, as noted, we cannot say this error was harmless. Erroneous instructions are "presumed to be prejudicial" and the Commonwealth "bears the burden of showing affirmatively that no prejudice resulted from the error." *Harp v. Commonwealth,* 266 S.W.3d 813, 818 (Ky.2008). The presumption may be rebutted by establishing that the error "did not affect the verdict or judgment." *Id. (citing* 5 C.J.S. *Appeal and Error* § 968 (2008)). However, "[o]ur prior case law holds that it is error to convict a defendant of a crime when the jury has not been properly instructed on the elements of the crime." *Sanders v. Commonwealth,* 301 S.W.3d 497, 499 (Ky.2010) (*citing Varble v. Commonwealth,* 125 S.W.3d 246 (Ky.2004); *Harper v. Commonwealth,* 43 S.W.3d 261 (Ky.2001)).

Because the jury was not properly instructed as to the domestic violence element (in that the trial court failed to include a definition of an "unmarried couple") we find the trial court's error to be prejudicial. Thus, we reverse and remand for anew trial on the fleeing or evading and PFO charges.

### 2. *Instructions to be Utilized on Retrial*

On retrial, the trial court should use the following definitional instructions,[6] among others, all of which should conform to the statutory language:

### INSTRUCTION NO. 3

For purposes of these Instructions, the following words or terms have the following meanings:

**Domestic violence**—means [physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault] between family members or members of an unmarried couple.[7]

---

6. For purposes of continuity, we are using the instruction numbers in our example that the trial court employed in its similar, but defective, instructions at trial.

7. We have included the entire definition of domestic violence in our sample definitional instruction. When this definition is utilized, however, only those terms in the bracketed portion which are supported by the evidence at trial should be included. For example, if

**Member of an unmarried couple—** means each member of an unmarried couple which allegedly has a child in common, any children of that couple, or a member of an unmarried couple who is living together or have formerly lived together.[8]

As to the fleeing or evading police charge, the trial court should employ the following instruction:

### INSTRUCTION NO. 5

You will find the Defendant, James M. Wright, guilty of first-degree fleeing or evading under this Instruction, if and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about March 11, 2010, and before the finding of an indictment herein, he knowingly disobeyed a direction to stop, which direction was given by a person who he recognized to be a police officer;

AND

B. That he did so with the intent to flee or elude;

AND

C. That he was fleeing immediately after committing an act of domestic violence, as defined in Instruction No. 3, on Lawanna Covington.

### B. Fines

there is only evidence of "physical injury" at trial, this definition will read: "Domestic violence—means physical injury between family members or members of an unmarried couple." Further definitions (such as a definition for physical injury, for example) should also be included.

8. Depending on the evidence presented at trial in a given case, either the definition for "member of an unmarried couple" or "family

In addition to his convictions for first-degree fleeing or evading and first-degree PFO, Appellant was convicted of fourth-degree assault (for which he was sentenced to twelve-months' imprisonment and fined $500) and possession of marijuana (for which he was fined $100). Appellant does not allege error in his convictions for these offenses;[9] therefore, his convictions for those crimes are affirmed. However, he argues—and the Commonwealth agrees—that the trial court erred by assessing Appellant criminal fines after previously finding him to be indigent.

Although Appellant admits this error was not properly preserved for review, he is correct in his assertion that this issue may be presented for the first time on appeal. *Travis v. Commonwealth*, 327 S.W.3d 456, 459 (Ky.2010). "[S]entencing ... cannot be waived by failure to object." *Wellman v. Commonwealth*, 694 S.W.2d 696, 698 (Ky.1985).

At Appellant's arraignment, the trial court found him to be an "indigent person" under KRS 31.100(3) and appointed the Department of Public Advocacy to aid him in his defense. Despite this finding, the trial court nevertheless included fines totaling $600 in Appellant's sentence pursuant to KRS 534.040(2). Under KRS 534.040(4), however, "[f]ines required by this section shall not be imposed upon any person determined by the court to be indigent pursuant to KRS Chapter 31." Because the trial court found Appellant to be indigent under KRS Chapter 31, it erred

member" should be included in the definitional instructions. We use "member of an unmarried couple" in our sample instruction as this is the definition that the trial court will include on remand in the case at bar.

9. Likewise, Appellant alleges no error regarding his twelve-month sentence for fourth-degree assault.

when it included fines in its sentencing order.

Therefore, we vacate Appellant's fines for the fourth-degree assault and possession of marijuana convictions; however, the convictions and sentences for these crimes are otherwise affirmed.

### III. CONCLUSION

For the foregoing reasons, we reverse Appellant's convictions and corresponding sentences for first-degree fleeing or evading and first-degree PFO and remand those matters to the Campbell Circuit Court for further proceedings consistent with this opinion. Furthermore, we affirm Appellant's convictions for fourth-degree assault and possession of marijuana; however, we vacate the fines imposed for those crimes.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, NOBLE, and VENTERS, JJ., concur. SCHRODER, J., not sitting.