RENDERED: MAY 28, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1738-MR

TONIA CALDWELL                                                        APPELLANT

v.          APPEAL FROM PIKE CIRCUIT COURT
            HONORABLE STEVEN D. COMBS, JUDGE
                ACTION NO. 18-CR-00196

COMMONWEALTH OF KENTUCKY                                              APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, KRAMER, AND MAZE, JUDGES.

MAZE, JUDGE: The primary question in this appeal is whether the inclusion of

inapplicable no-duty-to-retreat language in an instruction on self-protection

deprived appellant Tonia Caldwell of a fair trial. Because we are convinced that

the trial court abused its discretion in including that language in this case, we

reverse the judgment of conviction and remand for a new trial.

At approximately 10:00 a.m. on May 7, 2018, Trooper Hoyt Smith of the Kentucky State Police was dispatched to a residence in Pike County, Kentucky, concerning an alleged assault. Upon arriving at the residence of Thomas Varney, Trooper Smith observed blood in the yard, on the porch, and on the front door, as well as a shattered picture window. Forty-five-year old Varney told the Trooper that Caldwell and her daughter Christine had attacked him. Varney testified at trial that as he was opening his back door to take out the trash, Caldwell and Christine attacked him with a crowbar and demanded money. Although he was able to shut the back door and told the pair to go around to the front, Varney stated that as he as attempting to call 911, they shattered his front picture window and came inside his residence. Varney testified that in an ensuing struggle he received two stab wounds to his abdomen and a laceration on his left hand.

Varney also testified that two locks were broken off a closet door as the pair were looking for money he had won betting on the Kentucky Derby. Varney stated that he had told a mutual friend Tiara[1] about the winnings in their presence and also admitted that he had taken Tiara and Christine to his house on May 3, 2018 and had sex with them.

---

[1] Tiara is sometimes referred to as "T.T." by various witnesses. For consistency, we will refer to her as Tiara.

Christine's testimony differed from that of Varney. Stating that she was 17 years old on May 3, 2018, Christine testified that she had agreed only to go with Tiara and Varney on an "outing" which was to consist of lunch, a trip to the mall, and a visit to a race horse casino in Charleston, West Virginia. She alleged that no one had implied that she would be expected to have sex as part of this arrangement. Christine also testified that she had fallen asleep in Varney's car as she thought he was driving her back to the place she was staying in Logan, West Virginia. However, she stated that when she woke up, they were at Varney's house in Pike County and he would not drive her home unless she had sex with him. When he finally did take her home after sex, she left her backpack-purse in his vehicle when he dropped her off.

Christine also described the events surrounding her attempt to retrieve the backpack which culminated in her mother's conviction. After unsuccessfully attempting to contact Varney to arrange the return of the bag, Christine testified that she and her mother went to Varney's house. Christine maintained that she thought Varney would be out of town and thus she took a hunting knife in order to gain entry to his house. However, she also stated that she knocked on his back door and when he answered it, he grabbed her by the arm causing her to scream. Caldwell, who had been waiting in the car with Christine's infant child, heard her scream and broke through the front window and began fighting with Varney.

Christine alleged that Varney took the crowbar Caldwell had used to break the window as they were all struggling. Christine stated that she pulled out the knife intending to scare Varney and alleged that Varney had grabbed a kitchen knife. In the course of the struggle, Varney was cut on the arm when they all fell and then was cut in the stomach as he fought with her mother. Unable to locate her bag, Christina alleged that her mother used the crowbar to pry open a padlocked closet where they found the bag.

Caldwell's account of the facts giving rise to her conviction was similar to that of Christine and differed sharply from that of the victim. Caldwell alleged that in May 2018, she was staying in Logan, West Virginia, with the family of Christine's boyfriend along with Christine and her grandchild, Christine's infant son. She stated that Tiara, a friend of Christine's boyfriend, contacted Christine about accompanying her to go out to eat and to a mall with a guy. After Christine returned home, Caldwell learned of the sexual activity between Christine and Varney and decided it would be best if the family return home to Tennessee. However, the backpack purse Christine left in Varney's car contained their IDs which they needed to return home.

Caldwell testified that because they had been unable to arrange a time with Varney to retrieve the bag, they decided to stop by Varney's house on their way back home to Tennessee. Caldwell stated that she waited in their vehicle with

her sleeping grandchild while Christine went to the back door to knock when she heard Christine scream in terror. Unable to gain entry to the house through the locked front door, she broke the picture window with a crowbar and attempted to get Christine away from Varney. Caldwell testified that she tried to hit Varney with the crowbar but he was able to take it from her. Although she could not remember precisely what happened, Caldwell did remember that Varney had grabbed a knife from the kitchen and she also admitted that she had stabbed him in the abdomen during their altercation. After Christine was unable to locate her bag, they used the crowbar to pry the locks off his closet door where they found the bag. She stated that Varney had followed them out of the house, but they were able to drive away.

The Commonwealth did not cross-examine Caldwell about any aspect of her version of the events at Varney's house. Rather, the prosecutor's sole question was whether she was a convicted felon in another state. When Caldwell replied that this would be her first felony conviction, the prosecutor stated "okay" and that he had no further questions. The jury ultimately convicted Caldwell of one count of first-degree assault and she was sentenced to ten years' imprisonment. This appeal followed.

Concerning Caldwell's defense that she acted in protection of her daughter from Varney, the trial court instructed the jury as follows:

> If at the time the Defendant hit or stabbed Thomas Varney (if she did so), she believed that Thomas Varney was then and there about to use physical force upon Christina Justus, she had no duty to retreat if she was in a place where she had a right to be and was privilege[d] to use such physical force against Thomas Varney as she believed necessary in order to protect Christina Justice against it.

Defense counsel had argued to the court that, given the circumstances of this case, inclusion of the no-duty-to-retreat language would be unnecessarily confusing to the jury as to the who, what, and where of the events surrounding the assault. In tendering an instruction omitting the no-duty-to-retreat language, counsel stated the belief that the Commonwealth was in agreement with deleting that language, to which the prosecutor responded "I am." The trial court nevertheless declined to remove the no-duty-to-retreat language.

In *Ragland v. Commonwealth*, 476 S.W.3d 236 (Ky. 2015), the Supreme Court of Kentucky emphasized that trial courts are to give no-duty-to-retreat jury instructions only "when presented with circumstances in which the provisions of [KRS 503.055(3) and KRS 503.050(4)3] are applicable, and upon the request of one of the parties." *Id*. at 244. Applying the rationale of *Ragland* to the circumstances of Caldwell's case, we conclude that it was error to include the no-duty-to-retreat language in the self-protection instruction in issue here.

The Supreme Court in *Ragland* clearly explained the factors to be considered in including no-duty-to-retreat language in a self-protection instruction:

The problem with both the trial court's and the Commonwealth's mechanical approach to giving the no-duty-to-retreat instruction here is that it ignores that, as Ragland correctly points out, KRS 503.055(3) and its various qualifications were not implicated by the circumstances underlying the self-defense claim raised in this case. None of the circumstances surrounding the incident at Mitchell's apartment suggested that Ragland had an available route for retreat, or other opportunity to altogether avoid the confrontation and his violent response, that could have otherwise created "a risk that the jury w[ould] be misdirected to give it improper consideration." [*Commonwealth v.*] *Hasch*, [421 S.W.3d 349,] 363 (Ky. 2013). As this Court explained in *Hasch*, it is only in such situations "where evidence of an apparent means of retreat is so intertwined in the evidence in the case" that the trial court should give an appropriate no-duty-to-retreat instruction based on KRS 503.055(3). *Id*. **This is because so doing prevents the jury from improperly considering the available means of retreat, or the defendant's knowledge of the available means, as evidence that the use of force was not reasonably necessary or that the defendant did not subjectively believe that the use of force was necessary.** *Id*. But when there is no such risk, because the jury is not presented with any such evidence to improperly consider, there is no need to give the instruction.

*Id*. (emphasis added).

Here, there was no evidence offered as to opportunity to retreat and both the defense and the Commonwealth agreed the instruction would only serve to confuse the jury. As was the case in *Ragland*, the trial court appears to have been mistaken in its belief "that, since *Hasch*, such instructions are required to be given in all self-defense cases." *Id*. In addition, *Ragland* also makes clear that

-7-

erroneous instructions are to be presumed to be prejudicial and that the

Commonwealth bears the burden of affirmatively establishing that no prejudice

resulted from the error. In other words, the "Commonwealth may rebut this

presumption by demonstrating that the instructional error had no effect on the

verdict or judgment." *Id*. at 245 (citing *Wright v. Commonwealth*, 391 S.W.3d

743, 749 (Ky. 2012)).

Citing *Wilson v. Commonwealth*, 433 S.W.2d 864, 865 (Ky. 1968),

the Commonwealth argues that there was no prejudicial effect from giving the no-

duty-to-retreat instruction because the jury gave appellant the minimum sentence.

Although the Commonwealth is correct that the imposition of the minimum

sentence has been held to dispel a finding of prejudice alleged to have occurred

through improper argument, *Ragland* seems to suggest that would be insufficient

under the facts of this case:

> [E]ven if we applied the older standards, this Court is still
> convinced that the erroneous instruction requires
> reversal. By including the superfluous no-duty-to-retreat
> language, where the evidence did not support doing so,
> the court unnecessarily convoluted the jury's
> consideration of Ragland's self-defense claim, adding
> additional facts and conditions that the jury reasonably
> would have perceived as necessary to find before it could
> accept his self-protection defense. That needless
> convolution of the instruction, plus the failure to instruct
> the jury in the general self-protection portion of the
> instruction that Ragland was privileged to use force to
> protect himself against sexual intercourse compelled by
> force or threat, were unavoidably susceptible to

misleading or prejudicial interpretation by the jury and thus conducive to an unjust verdict.

476 S.W.3d at 245.

Accordingly, because the jury was presented with no evidence to support a no-duty-to-retreat instruction and because neither the defense nor the prosecution requested such instruction, we are convinced the error cannot be considered harmless and the judgment of conviction must be reversed and remanded for a new trial. Because this issue is dispositive, we need not consider Caldwell's additional unpreserved argument concerning the prosecutor's question regarding prior felony convictions which is unlikely to recur in a new trial.

The judgment of the Pike Circuit Court is reversed and the case remanded for a new trial consistent with this opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Molly Mattingly
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Kristin L. Conder
Assistant Attorney General
Frankfort, Kentucky