RENDERED: JULY 29, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2020-CA-0861-MR

ANDREW MANUEL												APPELLANT

v.						APPEAL FROM HENDERSON CIRCUIT COURT
						HONORABLE KAREN L. WILSON, JUDGE
						ACTION NO. 19-CR-00400

COMMONWEALTH OF KENTUCKY										APPELLEE

OPINION
AFFIRMING IN PART,
VACATING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, MAZE, AND McNEILL, JUDGES.

McNEILL, JUDGE: Andrew Manuel ("Manuel") appeals from the judgment of the Henderson Circuit Court convicting him of operating a motor vehicle under the influence of alcohol, fourth offense, and sentencing him to three years' imprisonment. For the following reasons, we affirm in part, vacate in part, and remand.

On the night of February 11, 2019, Officers Robert Gipson and Chris Pugh of the Henderson Police Department attempted to serve an arrest warrant on a woman named Andrea Johnson.[1] Upon arriving at her apartment, the officers found three children, ages 8, 7, and 2, unsupervised. Concerned for the children, the officers stayed to investigate. Johnson arrived and explained that she did not live at the apartment and thought that Manuel, her husband, was watching the children. Johnson informed the officers that she and Manuel were separated, and that Manuel, his sister, and her boyfriend lived at the apartment. The officers decided to wait outside for Manuel to return home.

Around 1:30 a.m., the officers saw a silver SUV driving at a high rate of speed come to an abrupt stop near the apartment complex and then drive away. Several minutes later Manuel appeared from inside the apartment and invited the officers in. Manuel admitted that he was inside the SUV. The officers noticed that he smelled of alcohol and had bloodshot eyes. However, at this time the investigation was still focused on why the children were home alone.

When questioned about his whereabouts, Manuel told officers that he took his cousin to Illinois around 5 p.m. and that the trip took about 1 hour and 45 minutes, one way. While Manuel claimed that he left Illinois around 7 p.m. to return home, he did not arrive until 1:30 a.m. When confronted with this time

---

[1] It turned out to be the wrong Andrea Johnson.

discrepancy, Manuel admitted to staying in Illinois to "chill." Originally, Manuel was expected to be home around 8 or 9 p.m. to watch the children.

Officer Gipson then asked Manuel how much alcohol he had consumed that evening, based upon Manuel's poor decision making regarding the children, and other physical signs of intoxication. At this point, according to Officer Gipson, the officers began investigating a possible driving under the influence ("DUI"). Manuel admitted to drinking alcohol but refused to take a breathalyzer or field sobriety test. Manuel objected and claimed, for the first time, that he had not been driving. Instead, he alleged a friend had driven his vehicle to Illinois.

Manuel claimed his friend had dropped him off and returned with his vehicle to Evansville, where she lived. The officers later discovered the SUV parked in a nearby parking lot. On the driver's side running board was a receipt from a gas station showing an alcohol purchase that evening, which was later traced to Manuel's credit card. Manuel also denied having keys to the vehicle, but a set was found in his jacket pocket. Based upon the totality of the circumstances, the officers arrested Manuel for driving under the influence.

At trial, the Commonwealth called Officers Gipson and Pugh to testify to the above facts, as well as presented the officers' body camera videos. Manuel's sole defense was that he was not driving the vehicle. Marjorie

Rembusch, Manuel's friend, testified that she had driven Manuel to and from Illinois. Manuel testified in his own defense to the same thing. Following the evidence, the jury convicted Manuel of operating a motor vehicle under the influence of alcohol, fourth offense, and recommended a sentence of three years' imprisonment. Subsequently, the trial court entered a judgment in accordance with the jury's verdict. This appeal followed. Further facts will be set forth as necessary below.

Manuel raises the following assignments of error on appeal: (1) the trial court erred in admitting testimony concerning the unsupervised children; (2) the trial court erred in denying his motion for directed verdict based upon insufficient evidence; and (3) the trial court erred in assessing a fine against him because he is indigent. We address each argument in turn.

Manuel first argues the trial court erred in admitting evidence of the unsupervised children found at Manuel's apartment. "The standard of review for a trial court's evidentiary rulings is abuse of discretion." *McDaniel v. Commonwealth*, 415 S.W.3d 643, 655 (Ky. 2013) (citation omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (internal quotation marks and citation omitted).

At trial, Officer Gipson testified that he and Officer Pugh went to the apartment of a woman named Andrea Johnson to serve an arrest warrant. Upon arrival, the officers found three children home alone. Manuel objected to the introduction of this testimony, arguing that it was irrelevant and unduly prejudicial. The trial court overruled the objection, noting that Manuel had failed to object to the Commonwealth's opening statement which also referenced the unsupervised children.

On appeal, Manuel again argues that evidence of the unsupervised children is irrelevant and unduly prejudicial.[2] He contends there is a high probability "that a Juror would want to punish Appellant for not being a more responsible father[.]" The Commonwealth argues this evidence is admissible pursuant to KRE 404(b)(2) because it is inextricably intertwined with the rest of the case, explaining how the officers came in contact with Manuel in the first place. They note that it was the investigation of the unsupervised children that led to the investigation of the DUI. While we disagree with the trial court's reasoning, we agree with its conclusion that evidence of the unsupervised children was admissible because it is inextricably intertwined with the DUI charge.[3]

---

[2] Manuel also argues that this evidence is inadmissible pursuant to Kentucky Rules of Evidence ("KRE") 404(b) but concedes that this argument was not presented to the trial court and is thus unpreserved.

[3] As an appellate court, we may affirm the trial court for any reason sustainable by the record. *Thomas v. Univ. Med. Ctr., Inc.*, 620 S.W.3d 576, 589 (Ky. 2020).

KRE 404(b)(2) allows admission of "other acts" evidence if it is "so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party."

> One of the accepted bases for the admissibility of evidence of other crimes arises when such evidence "furnishes part of the context of the crime" or is necessary to a "full presentation" of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its "environment" that its proof is appropriate in order "to complete the story of the crime on trial by proving its immediate context or the 'res gestae'" or the "uncharged offense is 'so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other . . .' [and is thus] part of the res gestae of the crime charged."

*Norton v. Commonwealth*, 890 S.W.2d 632, 638 (Ky. App. 1994) (citation omitted).

In other words, "KRE 404(b)(2) allows the Commonwealth to present a complete, unfragmented picture of the crime and investigation." *Adkins v. Commonwealth*, 96 S.W.3d 779, 793 (Ky. 2003), (citing ROBERT G. LAWSON, KENTUCKY EVIDENCE LAW HANDBOOK § 2.25 at 96 (3d ed. Michie 1993)). "[T]he key to understanding this exception is the word 'inextricably.' The exception relates only to evidence that must come in because it 'is so interwoven with evidence of the crime charged that its introduction is unavoidable.'" *Funk v.*

*Commonwealth,* 842 S.W.2d 476, 480 (Ky. 1992) (citation omitted). In determining the admissibility of "other acts" evidence, it is useful to analyze the evidence using a three-tier inquiry involving its: (1) relevance, (2) probativeness, and (3) prejudice. *Bell v. Commonwealth,* 875 S.W.2d 882 (Ky. 1994).

Using this three-tier analysis, evidence of the unsupervised children was properly admissible under KRE 404(b)(2). This evidence was necessary to provide context for the discovery and investigation of the possible DUI offense. Without this information, the jury would be left wondering why the officers were waiting at Manuel's apartment at 1:30 in the morning. Further, Officer Gipson testified that Manuel's decision-making regarding the unsupervised children was one of the factors leading to his suspicion that Manuel might have been driving under the influence and thus was relevant to explain how the officers began investigating Manuel for DUI.

In sum, evidence of the unsupervised children was so intimately connected with and explanatory of the crime charged that its admission was appropriate "to present a complete and unfragmented picture of the circumstances surrounding how the crime was discovered." *Clark v. Commonwealth*, 267 S.W.3d 668, 681 (Ky. 2008). Further, we do not believe that the probative value of this evidence was substantially outweighed by the danger of undue prejudice. KRE 403. In fact, as the Commonwealth notes, Manuel's concern "that a juror would

want to punish [him] for not being a more responsible father" appears unfounded, as the jury could have recommended a sentence of up to five years, but instead chose three years.

While Manuel takes issue with "the pervasive and excessive criticism levied at Appellant for the children being home alone[,]" most of this evidence was admitted via the officers' body camera video, which Manuel did not object to being introduced at trial. In fact, Manuel's counsel wanted the video to be played, stating that there were parts of the video she found "beneficial." When given the opportunity to make specific objections to certain portions of the video being played, Manuel's counsel's only objection was that the video was long. When the Commonwealth asked whether the parties should take the time to edit the video or play it as it is, Manuel's counsel elected to play the video as it is. "These alleged errors, therefore, were not merely unpreserved, they were invited. Generally, a party is estopped from asserting an invited error on appeal." *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 37 (Ky. 2011) (citation omitted).

Manuel next argues the trial court erred in failing to grant a directed verdict due to insufficient evidence. Manuel concedes that this alleged error is unpreserved and therefore requests palpable error review. We review unpreserved errors for palpable error resulting in manifest injustice. RCr[4] 10.26. "[T]he

---

[4] Kentucky Rules of Criminal Procedure.

required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006).

"To discover manifest injustice, a reviewing court must plumb the depths of the proceeding . . . to determine whether the defect in the proceeding was shocking or jurisprudentially intolerable." *Id.* at 4. "When an appellate court engages in a palpable error review, its focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Id.* at 5.

"On appeal, the standard for a directed verdict is if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then . . . is [the defendant] entitled to a directed verdict of acquittal." *Commonwealth v. Goss*, 428 S.W.3d 619, 629 (Ky. 2014) (internal quotation marks and citation omitted). Manuel argues that the evidence was insufficient for a reasonable juror to find him guilty of DUI. He points to the fact that he denied driving the vehicle and no one ever saw him driving the vehicle. Further, he challenges Officer Gipson's interpretation of the evidence.

For instance, Officer Gipson testified to several inconsistent statements by Manuel as evidence that Manuel had been driving the vehicle: Manuel first told officers that he had taken his cousin to Illinois but then later said

a friend drove his vehicle; Manuel said his friend had dropped him off and taken his vehicle to Evansville but Manuel's car was found in a nearby parking lot; Manuel said he did not have the keys to his vehicle but a set was found in his jacket pocket.

Manuel argues that his story was consistent, and that these alleged inconsistencies can be explained away. Essentially, Manuel argues for one interpretation of the evidence over another. However, "[c]redibility and weight of the evidence are matters within the exclusive province of the jury." *Commonwealth v. Smith*, 5 S.W.3d 126, 129 (Ky. 1999). Here, there was sufficient evidence that Manuel had been driving the silver SUV to avoid a directed verdict. A reasonable juror could interpret Manuel's misstatements that his vehicle was in Evansville and that he did not have the keys as evidence he had been driving and was trying to avoid getting charged with DUI. Further, the officers located a receipt, dated to the night of the incident, on the driver side running board of Manuel's vehicle showing alcohol purchased with Manuel's credit card. Based upon this evidence, we cannot say that it would be clearly unreasonable for a jury to find him guilty. Therefore, we find no error, much less palpable error.

Finally, Manuel argues – and the Commonwealth agrees – that the trial court erred in assessing him a fine because he is an indigent person. While Manuel concedes this issue is unpreserved, he is correct that it may be presented

for the first time on appeal. *Wright v. Commonwealth*, 391 S.W.3d 743, 750 (Ky. 2012) (citing *Travis v. Commonwealth*, 327 S.W.3d 456, 459 (Ky. 2010)). In its final judgment, the trial court imposed a $500 fine on Manuel, despite having previously found Manuel to be indigent pursuant to KRS[5] 31.100(5). Under KRS 534.030(4), however, "[f]ines required by this section shall not be imposed upon any person determined by the court to be indigent pursuant to KRS Chapter 31."[6] Therefore, the trial court erred by imposing the fine.

Based upon the foregoing, we affirm Manuel's conviction but vacate the $500 fine and remand this case for entry of a new judgment consistent with this Opinion.

CALDWELL, JUDGE, CONCURS.

MAZE, JUDGE, CONCURS IN RESULT ONLY.

---

[5] Kentucky Revised Statutes.

[6] In *Commonwealth v. Moore*, 545 S.W.3d 848, 852 (Ky. 2018), the Kentucky Supreme Court held that KRS 534.030 applied to felony DUI (fourth or subsequent offense) convictions to exempt indigent defendants from fines.

BRIEFS FOR APPELLANT:

Aaron Reed Baker
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

E. Bedelle Lucas
Assistant Attorney General
Frankfort, Kentucky