# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: FEBRUARY 20, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0315-MR

ISAIAH D. JOHNSON                                               APPELLANT

           ON APPEAL FROM HENDERSON CIRCUIT COURT
V.                HONORABLE KAREN LYNN WILSON, JUDGE
                 NOS. 21-CR-00285 & 21-CR-00301

COMMONWEALTH OF KENTUCKY                      APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Isaiah D. Johnson appeals as a matter of right[1] from a Henderson Circuit Court judgment sentencing him to twenty-years' imprisonment for assault in the first degree, fleeing and evading in the first degree, and retaliating against a witness in a legal process, as enhanced by his status as a second-degree persistent felony offender. Johnson also pleaded guilty to possession of a firearm by a convicted felon and was sentenced to two-years' imprisonment to run concurrent with the other sentence. On appeal, Johnson raises two issues: (1) error from the trial court's failure to enter a directed verdict as to fleeing and evading, and (2) an erroneous instruction on assault first degree. Finding no merit to either contention, we affirm the trial court.

---

[1] KY. CONST. § 110(2)(b).

## FACTUAL AND PROCEDURAL BACKGROUND

Johnson and Stephanie Simon met as neighbors while Johnson was living with his mother in Henderson, Kentucky. Neighborly pleasantries turned to affection and the two eventually began to date. Their dating relationship lasted for about a year until the coupling turned sour. As things got worse, Simon elected to move out of her home and into a hotel room, apparently to get away from Johnson. Neither party acknowledged living with one another at any point during the relationship.

On May 26, 2021, Simon returned to her hotel room from work to find Johnson awaiting her. Johnson indicated he needed to go somewhere and needed Simon to take him, but would not say where. Simon and Johnson then drove around Henderson, Simon taking Johnson to "a couple places that I knew he went." Eventually they arrived at Henderson Station, where Simon parked and the two sat in the car together.

Simon was paying little attention to Johnson, and may have had her eyes closed, when she felt a soundwave go past her ears. Simon was unsure what was happening but felt odd and hot. Johnson told her they needed to get out of there, but when Simon tried to back the car up, she could not. She looked down at her legs and saw a hole that was "gushing blood." Johnson had shot Simon in the leg.

Simon was able to drive the car to a nearby street, where she exited the vehicle and immediately fell. Johnson picked her up and put her in the passenger seat, but instead of taking Simon to the hospital, Johnson drove to

2

the tennis courts where they met Johnson's relative.[2]  When Simon protested, Johnson threatened to shoot her in the head.  The relative tried and failed to remove the bullet from Simon's leg until eventually the relative elected to drive Simon to the hospital.  The relative dropped Simon at the hospital and departed.  The gunshot wound to her leg was significant, but Simon was able to recover, though not without pain.

Simon informed police Johnson was the shooter and in short order Lieutenant Stuart Onan was able to locate Johnson driving the local roads. Onan recognized Johnson and Onan activated his lights to effect a traffic stop, but Johnson did not stop; instead he sped up and blew through a stop sign. Onan declined to pursue due to safety concerns, but during his continued patrol of the area he located Johnson on foot and apprehended him.  Officers also found a 9mm pistol in the area from where Johnson was coming.

Johnson was indicted in case 21-CR-285 for one count of possession of a handgun by a convicted felon, fleeing and evading in the first degree, possession of marijuana, and persistent felony offender second degree. Johnson was subsequently indicted in case 21-CR-301 for one count of assault first degree, domestic violence, retaliating against a participant in the legal process, and persistent felony offender second degree.  The two cases were consolidated for trial, although the Commonwealth ultimately elected to try the possession of a handgun charge separately.

---

[2] The identity of the relative was never definitively established.

3

The details of the trial as relevant to this appeal are recited below. At its conclusion, the jury found Johnson guilty of first-degree assault, first-degree fleeing and evading, and retaliating against a participant in the legal process. The jury recommended that Johnson be sentenced to ten years on the assault and five years each on the charges of fleeing and evading and retaliating against a participant in the legal process, all to run consecutive for a total of twenty years. The jury then determined Johnson to be guilty of persistent felony offender second degree and enhanced his sentence for first-degree assault from ten to twenty years, but now with the other sentences to run concurrently, again for a total of twenty years. The trial court entered a final judgment and sentence consistent with the jury's recommendation. Johnson later pleaded guilty to an amended count of possession of a firearm by a convicted felon and received a two-year term of imprisonment to run concurrent with the charges from his trial. This appeal followed.

## ANALYSIS

*A. Johnson and the victim were not shown to be an unmarried couple.*

Johnson's first contends that the trial court erred in failing to deliver a directed verdict as to the first-degree fleeing and evading charge because no evidence was adduced at trial to establish he and Simon were members of an unmarried couple pursuant to KRS[3] 402.720(6). Johnson concedes this claim is unpreserved and asks that we review for palpable error under RCr[4] 10.26.

---

[3] Kentucky Revised Statutes.

[4] Kentucky Rules of Criminal Procedure.

4

Accordingly, we will reverse only if "a manifest injustice has resulted from the error. That means that if, upon consideration of the whole case, a substantial possibility does not exist that the result would have been different, the error will be deemed nonprejudicial." *Graves v. Commonwealth*, 17 S.W.3d 858, 864 (Ky. 2000) (citing *Jackson v. Commonwealth*, 717 S.W.2d 511, 513 (Ky. App. 1986)). For the following reasons, we hold the trial court did not commit palpable error in failing to grant a directed verdict as to fleeing and evading first degree.

Our review of Johnson's claim begins with a recognition of the trial court's obligations:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

*Commonwealth v. Benham*, 816 S.W.3d 186, 187 (Ky. 1991). Upon appellate review, the test for a directed verdict "is if, under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then is the defendant entitled to a directed verdict of acquittal." *Id.* (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3, 4-5 (Ky. 1983)).

Fleeing and evading first degree, in relevant part, requires,

> while operating a motor vehicle with intent to elude or flee, the person knowingly or wantonly disobeys a direction to stop his or her motor vehicle, given by a person recognized to be a police

5

officer, and. . . [t]he person is fleeing immediately after committing an act of domestic violence as defined in KRS 403.720.

KRS 520.095(1)(a). KRS 403.720(2)(a) defines domestic violence as "Physical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple[.]" In turn, a member of an unmarried couple is defined as "each member of an unmarried couple which allegedly has a child in common, any children of that couple, or a member of an unmarried couple who are living together or have formerly lived together[.]" KRS 403.720(6). Johnson points out that he and the victim do not have a child in common and he argues that no evidence was introduced at trial to show he and the victim lived together or had ever lived together.

Our appellate courts have strictly construed the requirement that both parties live together in the domestic violence context according to KRS 403.720. In *Rivers v. Howell*, a Kentucky Court of Appeals case addressing standing for a domestic violence order, that court observed that "Despite the liberal construction afforded the [domestic violence] statutes, Kentucky courts have consistently held that a typical 'boyfriend/girlfriend relationship' is not within its coverage" and that "'living together' implied 'some sort of cohabitation.'" 276 S.W.3d 279, 282 (Ky. App. 2008) (quoting *Barnett v. Wiley*, 103 S.W.3d 17, 19 (Ky.2003)). Even under the more expansive concept of

"living together" employed in the family court context[5], we have "held that there at a minimum, be proof that 'the petitioner seeking a DVO shares or has shared living quarters with the respondent before a finding can be made that the two are an "unmarried couple" under KRS 403.725.'" *Id.* (quoting *Barnett*, 103 S.W.3d at 20). Thus, for the charge of fleeing and evading against Johnson to stand, the Commonwealth must present more than just evidence that Johnson and the victim were in a relationship, it must prove the two lived with one another at some point.

Our review of the evidence convinces us the Commonwealth failed to meet its burden. Regarding the couple's living situations, the evidence adduced at trial unambiguously only reflected that Johnson lived with his mother and the victim lived next door. After the victim left her home to escape Johnson and moved into a hotel, no testimony indicated that Johnson stayed with the victim for even one night. In short, the evidence did not show the two ever lived together.

Neither Johnson's presence in the victim's room or the couple's discussion of "home" on a jail call proves otherwise. Johnson's presence in the victim's room the day of the shooting was apparently a surprise to the victim and certainly did not suggest that Johnson had been there since the previous night. And a jail call between Johnson and the victim wherein Johnson said "I

---

[5] To be clear, we have explicitly rejected the idea that the "living together" factors set forth in *Barnett* are appropriate in a criminal trial for first-degree fleeing or evading based on fleeing after committing act of domestic violence. *Wright v. Commonwealth*, 391 S.W.3d 743, 378-49 (Ky. 2012).

need you to get me home" and the victim responded "I want you home" established only one thing: Johnson had a home. Where that home was and who also lived in that home remains unclear. Indeed, the exchange just as reasonably could be interpreted as Johnson wanting to return to his mother's home where he lived prior to the shooting. Although the jury is permitted to "make a reasonable and logical inference or conclusion of a definite fact" if "there [is] competent and relevant evidence," *Clark v. Commonwealth*,[6] the logical leap the Commonwealth seeks to establish goes too far.

Finally, that the defense erroneously represented to the jury during closing arguments that "[o]bviously at one point these folks had lived together. They were obviously at some point in love with each other, whether they are still now or not—on those jail calls it was made pretty clear that they were in love and lived together at some point," does not cure the error. "Closing arguments are not evidence," *Mayse v. Commonwealth*, 422 S.W.3d 223, 227 (Ky. 2013), and "[t]he Commonwealth has the burden of proving every element of the case beyond a reasonable doubt." KRS 500.070(1). Failure to prove every element "entitles the defendant to a directed verdict on that offense." *Justice v. Commonwealth*, 636 S.W.3d 407, 412 (Ky. 2021), *abrogated on other grounds by Sexton v. Commonwealth*, 647 S.W.3d 227, 232 (Ky. 2022). The defense did not waive the Commonwealth's burden to prove every element through its non-evidentiary statements to the jury. We do not suggest the

---

[6] 567 S.W.3d 565, 569 (Ky. 2019) (quoting *Beatrice Foods Co. v. Chatham*, 371 S.W.2d 17, 19 (Ky. 1963))

8

defense can never waive an issue through its actions—as demonstrated *infra*—but in this instance the misapprehension of the evidence by Johnson did not amount to such waiver.

Nevertheless, Johnson did waive his claim by failing to object to the sufficiency of the evidence on domestic violence and failing to object to jury instructions requiring a domestic violence. In essence, Johnson asks us to reverse his conviction because the trial court failed to *sua sponte* direct a verdict. However, Johnson cannot concede the existence of a fact at trial and then argue its non-existence as a basis for appeal.

Our case law is clear that even a failure of proof is subject to waiver by failure to make the appropriate objections. "It is settled that except in the most flagrant of circumstances even constitutional rights may be waived by nonassertion." *Rudolph v. Commonwealth*, 564 S.W.2d 1, 4 (Ky. 1977), *overruled on other grounds by Woods v. Commonwealth*, 793 S.W.2d 809 (Ky. 1990). Accordingly, where a party fails to move for a directed verdict on a particular element, he waives the issue on appeal. *See Newell v. Commonwealth*, 549 S.W.2d 89, 91 (Ky. 1977) ("Proof that a defendant was over the age of eighteen at the time of the commission of the prior felony offense is an essential element of the persistent felony offender statute, but a failure of such proof may be waived by not directing the attention of the trial court to the omission by appropriate objections."); *Cox v. City of Louisville*, 439 S.W.2d 51, 54 (Ky. 1969) (holding failure to move for directed verdict on issue of liability waived issue because "A party waives the insufficiency of his adversary's

9

evidence when he fails to challenge it by a motion for a peremptory instruction.").

Of course, Johnson acknowledges his failure to preserve the issue and requests review for palpable error. Our review under that more stringent standard does not change the result. We have declined to find palpable error where the Commonwealth is alleged to have failed to meet their evidentiary burden, but the defendant does not timely object. *E.g, Commonwealth v. Wolford*, 4 S.W.3d 534, 535-36 (Ky. 1999) (finding no palpable error for the giving of a lesser-included instruction unsupported by the evidence). Here, Johnson's objection to the evidence did not include a challenge to the living arrangements of himself and the victim. Accordingly, we hold no palpable error occurred.

### B. *No reversal due to the assault first-degree instruction.*

Johnson next argues his conviction was tainted by the use of an irregular jury instruction for determining guilt for assault first degree. Inexplicably, the Commonwealth and Johnson, as well as the trial court, saw fit to insert an additional element to assault first degree that required the jury to find Johnson and Simon were "members of an unmarried couple." The parties apparently did this under the mistaken desire to conform the instructions to the indictment which listed the charge against Johnson as "First Degree Assault – Domestic Violence." However, assault first degree is not enhanced by virtue of it occurring as an act of domestic violence and no legal

10

basis exists for the inclusion of the "unmarried couple" element.[7]  Johnson's argument as to why the element's inclusion supports reversal—other than the simple non-necessity of it—is muddled, but appears to suggest the additional, non-contested element led the jury to believe assault first degree was the only viable conviction.  We find Johnson's argument unavailing.

> At a minimum, [jury] "[i]nstructions must be based upon the evidence and they must properly and intelligibly state the law." *Howard v. Commonwealth*, 618 S.W.2d 177, 178 (Ky.1981).  Their purpose "is … to state what the jury must believe from the evidence. . . in order to return a verdict in favor of the party who bears the burden of proof." *Webster v. Commonwealth*, 508 S.W.2d 33, 36 (Ky.1974).  In criminal cases, instructions "should conform to the language of the statute," *Parks v. Commonwealth*, 192 S.W.3d 318, 326 (Ky.2006)[.]

*Wright v. Commonwealth*, 391 S.W.3d 743, 746 (Ky. 2012).  Although "erroneous jury instructions are presumed to be prejudicial," *Mason v. Commonwealth*, 331 S.W.3d 610, 623 (Ky. 2011), "superfluous language in instructions, when 'there is no reason to think the jury was misled', can be simply harmless error." *Commonwealth v. Caudill*, 540 S.W.3d 364, 367 (Ky. 2018) (quoting *Travis v. Commonwealth*, 327 S.W.3d 456, 463 (Ky. 2010)).

The jury instructions were erroneous; our statutes do not contain an enhancement for domestic violence and so the additional element was superfluous language that did not conform to the language of the law. However, the inclusion was not reversible error for two reasons.  First, the error was harmless.  Although Johnson is at pains to explain to us how the

---

[7] Curiously, the parties recognized this to be the case for assault second degree.

additional element prejudiced him, we cannot see how this could be so. Johnson and the Commonwealth agreed, perhaps erroneously, that Johnson and Simon were an unmarried couple, rendering the additional element effectively null. And, if the point had been contended, the addition of the "unmarried couple" requirement could only have inured to Johnson's benefit by presenting an additional obstacle to convict him of first-degree assault. We have not found harm in the past where a superfluous element heightened the Commonwealth's burden of proof and we do not do so here. *See Caudill*, 540 S.W.3d at 369 (finding harmless additional language requiring a finding that Caudill was "not privileged to act in self-protection" with regard to wanton endangerment first-degree); *Carrier v. Commonwealth*, No. 2005-SC-000440-MR, 2008 WL 199838, *2 (Ky. Jan. 24, 2008) (finding language in murder instruction requiring the jury to find "Carrier did not believe that she was privileged to act in self-protection" to be harmless surplusage).

Second, we would be remiss if we did not acknowledge that the additional element was *made at the request of Johnson.* We need not belabor the point that a defendant may not invite error into his trial and then reap the rewards of that error on appeal. "[I]nvited errors that amount to a waiver, i.e., invitations that reflect the party's knowing relinquishment of a right, are not subject to appellate review." *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 38 (Ky. 2011). "Because Appellant himself proposed the [] instruction, which was ultimately given, his right to appellate review of the claimed instructional error was relinquished." *Thornton v. Commonwealth*, 421 S.W.3d 372, 377 (Ky.

2013). Accordingly, even if the error had not been harmless, Johnson waived his claim by requesting the erroneous instruction in the first place.

## CONCLUSION

For the foregoing reasons, the judgment of the Henderson Circuit Court is affirmed in all respects.

All sitting. Lambert, C.J.; Conley, Goodwine, Keller, Nickell, and Thompson, JJ., concur. Bisig, J., concurs in result only

COUNSEL FOR APPELLANT:

Jennifer Wade
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General

13