RENDERED: DECEMBER 9, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0483-ME

GABRIEL JONES                                                                   APPELLANT

APPEAL FROM DAVIESS CIRCUIT COURT
v.         HONORABLE JOSEPH W. CASTLEN, III, JUDGE
ACTION NO. 22-D-00042-001

DOREMA HEAVNER                                                                 APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: DIXON, GOODWINE, AND MAZE, JUDGES.

GOODWINE, JUDGE: Gabriel Jones ("Jones") appeals from a March 30, 2022

domestic violence order ("DVO") granted by the Daviess Circuit Court, Family

Division on behalf of Dorema Heavner ("Heavner"). After careful review, finding

no error, we affirm.

# BACKGROUND

On February 16, 2022, Heavner petitioned the family court for an order of protection against Jones. Based on Heavner's petition, the family court entered an emergency protective order ("EPO") on her behalf, scheduled a hearing on the petition, and ordered Jones to surrender his firearms.

Jones, Heavner, and their separate counsel appeared for an initial hearing on February 23, 2022. Jones filed motions to dismiss the petition, for a continuance, and for sanctions on the day of the hearing. The motion for sanctions was not addressed at the hearing. At the hearing, Jones argued the petition should be dismissed for lack of standing because he alleged the parties never lived together. Jones stated he needed a continuance for more time to review video footage from Jones's father's house,[1] and he requested Heavner narrow down the timeframe of the alleged incidents of domestic violence that occurred at the house. The family court ordered Heavner to provide Jones the approximate dates of the videos described in her petition and continued the hearing for two weeks.

On March 8, 2022, the morning before the second hearing, Heavner filed a verified amendment to the petition for domestic violence order providing the date ranges for videos of the alleged incidents in the original petition. The amended petition stated Heavner was not represented by counsel when she filed

---

[1] Notably, these videos were not admitted into evidence during the evidentiary hearing.

her petition and was nervous, so she confused the dates in her petition. She provided date ranges and more detail regarding Jones's alleged violent acts against her as requested.

The family court held a second hearing on March 9, 2022. Jones's counsel filed motions on the morning of the hearing. Jones moved for a full evidentiary hearing, to strike the petition and amended petition, and for written findings of fact and law. Heavner requested a continuance for time to respond to the motions, and a police officer, who was to testify at the evidentiary hearing, was unavailable due to a bomb threat at a local high school. Heavner also needed more time to review videos received from Jones's counsel. Jones's counsel objected to a continuance arguing Jones's Second Amendment rights would be infringed on for a total of six weeks before the evidentiary hearing.

Heavner filed written responses to Jones's motions.

Jones filed a motion for injunctive relief to enjoin the suspension of his concealed carry license until the family court made a finding on the merits. Jones requested an emergency hearing on the motion. The family court entered an order declining to hold an emergency hearing and denying Jones's motion for injunctive relief. The family court found that Jones caused much of the delay and failed to join the sheriff as a party.

At the final evidentiary hearing on March 30, 2022, the family court heard testimony from both parties and their witnesses. Heavner testified the parties had been in a relationship since 2019 when she was nineteen years old. Heavner moved out of her parents' home when her father kicked her out, and she moved in with Jones at his father's house sometime in October 2021. She became pregnant during that time, but she miscarried.

Heavner testified the domestic violence began before the couple lived together. Heavner described four violent incidents that occurred between approximately May and September 2021. During those incidents, Jones grabbed Heavner's arm preventing her from leaving a car twice, punched the dashboard of Heavner's car and left blood in it, broke Heavner's cellphone twice, and brandished a gun threatening to kill himself. On September 11, 2021, Heavner alleged Jones pointed a gun at her and one of her friends, she tried to hide the clips and other guns from him, they struggled over the gun, and he broke both of their phones to prevent her from calling the police. On re-direct, Heavner testified this occurred in the wee hours of September 11.

One night shortly after moving in together in October 2021, Heavner confronted Jones about him seeing other women and using steroids. Jones shoved Heavner into a closet with such force that it broke the door. Jones then threw items

across the room, including Heavner's cellphone, for a third time, when she tried to call 9-1-1.

During another argument on November 6, 2021, Jones violently threw glasses around the kitchen, which shattered on the floor. Jones again pulled out a gun and threatened to kill himself.

On November 14, 2021, Heavner moved out of the shared residence. Jones began stalking Heavner and hacking into her social media accounts. On January 31, 2022, Jones was criminally charged with stalking, harassment, and harassing communications. At the time of the hearing, the charges were still pending. Jones's friends also sent Heavner threatening text messages.

On cross-examination, Jones's counsel tried to establish that Heavner was a guest at Jones's father's house. She testified that Jones invited her to stay after she was kicked out of her parents' house, but his father did not invite her. Heavner did not change her address on her drivers' license, did not have a lease, or pay utilities. However, she did move all her belongings to the shared residence and kept them in the closet of the room they shared. Jones's counsel also used text messages to impeach Heavner's testimony regarding the dates she alleged the violent incidents occurred.

Heavner's parents testified they saw bruises on her body. Heavner's father testified that he had a conversation with Jones one day about the bruises on

Heavner's body. When he asked Jones if he caused the bruises, Jones confirmed that he did.

Jones's father also testified. Jones's counsel sought to prove that the incident Heavner alleged occurred on September 11, 2021 could not have occurred on that date because Jones and his father went to a baseball game in St. Louis, Missouri. He also testified that Heavner stayed at his house here and there. Jones's father testified he did not see any domestic violence occur and did not see her bruises. He testified he kept his guns in a safe after the EPO against Jones, and he dropped Jones's guns off at the sheriff's office.

Jones testified last. He denied any acts of domestic violence. He claimed he accidentally broke one of Heavner's cellphones, did not break another, and seemed to admit he intentionally broke one phone but on a different date than Heavner alleged. He said he never grabbed her or deleted pictures of her bruises from her phone. He said he would never try to hurt Heavner. Jones testified that, on one occasion, Heavner had been in the hot tub at his father's house. It was cold outside, and Heavner was drunk. She tried to walk down the street wearing only a bathing suit and wrapped in a towel. Jones testified he left bruises on her arms trying to get her back inside the house to keep her safe.

On cross-examination, Jones admitted he broke more than one of Heavner's phones. He also admitted he threatened to kill himself in front of Heavner.

At the close of evidence, the family court found, based on all the witnesses' testimony, Heavner's testimony and that of her witnesses more credible than Jones's. The court further found the parties lived together in an intimate relationship for some time. The family court then entered a DVO against Jones on form AOC-275.3, checking the box finding the parties were "unmarried, currently or formerly living together." Record ("R.") at 77. The family court also checked the box finding "it was established, by a preponderance of the evidence . . . that an act(s) of domestic violence and abuse . . . has occurred and may again occur[.]" Finally, the family court checked the box requiring Jones's "Kentucky license to carry surrendered to [the] Court" under KRS[2] 237.110(13)(k). *Id.* The trial court also wrote on its March 30, 2020 docket sheet: "All parties appeared and hearing held. 3 year DVO; no contact; no communication." R. at 79. No post-judgment motions were filed by either party. This appeal followed.

## STANDARD OF REVIEW

A family court may enter a DVO if it finds "by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur[.]"

---

[2] Kentucky Revised Statutes.

-7-

KRS 403.740(1). "The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence." *Dunn v. Thacker*, 546 S.W.3d 576, 580 (Ky. App. 2018) (citing *Baird v. Baird*, 234 S.W.3d 385, 387 (Ky. App. 2007)). "Domestic violence and abuse" includes "physical injury." KRS 403.720.

"[T]he standard of review for factual determinations is whether the family court's finding of domestic violence was clearly erroneous." *Dunn*, 546 S.W.3d at 578 (citations omitted). A family court's findings are not clearly erroneous if they are "supported by substantial evidence." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citation omitted). Substantial evidence is that "which would permit a fact-finder to reasonably find as it did." *Randall v. Stewart*, 223 S.W.3d 121, 123 (Ky. App. 2007) (citation omitted).

> Regardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding, due regard shall be given to the opportunity of the [family] court to judge the credibility of the witnesses because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the [family] court.

*Moore*, 110 S.W.3d at 354 (internal quotation marks and citations omitted).

Furthermore, a family court's evidentiary rulings should only be reversed "where there has been clear abuse of discretion." *Page v. Commonwealth*, 149 S.W.3d 416, 420 (Ky. 2004) (citation omitted). "The test for

abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

## ANALYSIS

On appeal, Jones argues the family court erred in: (1) determining Heavner had standing to pursue a DVO; (2) finding domestic violence and abuse occurred was supported by substantial evidence; (3) failing to hold a hearing within fourteen days as required by statute; (4) failing to make required written findings of fact and conclusions of law; and (5) accepting Heavner's amended petition.

We begin by addressing Jones's arguments regarding the family court's findings of fact and conclusions of law, then we will turn to his procedural argument. First, Jones argues Heavner lacked standing to obtain a DVO because the parties did not live together. The definition of "[m]ember of an unmarried couple" includes couples who are "living together or have formerly lived together[.]" KRS 403.720(6). Although Kentucky has acknowledged the six factors in *State v. Kellogg*, 542 N.W.2d 514, 518 (Iowa 1996) are relevant, they are not conclusive to determining whether an unmarried couple lived together. *Barnett v. Wiley*, 103 S.W.3d 17, 20 (Ky. 2003).

1. Sexual relations between the parties while sharing the same living quarters.

2.  Sharing of income or expenses.

3.  Joint use or ownership of property.

4.  Whether the parties hold themselves out as husband and wife.

5.  The continuity of the relationship.

6.  The length of the relationship.

More importantly, "under the plain language of the statute, there must be, at a minimum, proof that the petitioner seeking a DVO shares or has shared living quarters with the respondent before a finding can be made that the two are an 'unmarried couple' under KRS 403.725." *Id.*

In *Benson v. Lively*, 544 S.W.3d 159, 165 (Ky. App. 2018), this Court applied *Barnett* in determining a couple who lived together for approximately six weeks and were in an intimate relationship for six years were an "unmarried couple" under KRS 403.725. This Court rejected the appellant's argument that the couple "never lived together in any permanent capacity" because the "statute contains no minimum period of time the couple must have cohabitated before there is standing to seek a DVO." *Benson*, 544 S.W.3d at 165.

Here, the record shows Jones and Heavner had sexual relations while living together as Heavner became pregnant though she later miscarried. Both jointly used Jones's father's house. The parties were in a relationship for about three years. The parties dispute whether they lived together for a couple weeks or

-10-

a couple months, but "couples might experience domestic violence in the first few days or weeks of cohabitation." *Id.* At the conclusion of the evidentiary hearing, the family court stated it found Heavner's and her witnesses' testimony more credible than Jones's and his witnesses' testimony. It is not our province to weigh the credibility of witnesses, and our review of the record indicates the family court's findings were supported by substantial evidence. The family court's finding that the parties were members of an unmarried couple was not clearly erroneous. Thus, the family court correctly found Heavner had standing to seek a DVO against Jones.

Second, Jones argues the family court's finding that domestic violence and abuse occurred and may occur again was unsupported by the evidence. He argues because Heavner changed the dates the alleged violence occurred in her amended petition, "[t]here could be no evidence of the approximate date of the alleged conduct because they constantly changed! . . . Moreover, concrete physical evidence demonstrated that her allegations were untrue, which should overcome any testimony she gave to the contrary." Appellant's brief at 15. Jones asserts the photos of himself and receipts from a trip to St. Louis, Missouri prove he could not have committed an act of domestic violence on September 11, 2021.

> [T]he trier of fact has the right to believe the evidence
> presented by one litigant in preference to another. The
> trier of fact may believe any witness in whole or in part.
> The trier of fact may take into consideration all the

-11-

circumstances of the case, including the credibility of the witness.

*Gomez v. Gomez*, 254 S.W.3d 838, 842 (Ky. App. 2008) (citation omitted).

The family court clearly understood its role in weighing the credibility of the witnesses. During Heavner's testimony, the family court specifically stated it was considering the inconsistency in Heavner's dates in weighing her credibility. In reviewing the video recording of the evidentiary hearing, this Court found discrepancies in Jones's testimony too. Specifically, Jones admitted to breaking Heavner's phone more than once on cross-examination when he previously denied breaking a phone and testified at least one phone was broken accidentally.

Below and on appeal, Jones focused on discrepancies in the dates Heavner alleged the acts of domestic violence occurred. Prior to the hearing, Jones sought more time to review video footage from the cameras at his father's house. No videos were presented as exculpatory evidence at the hearing. Aside from evidence that Jones was in St. Louis, Missouri on September 11, 2021, the only exculpatory evidence Jones presented for all other violent acts was his and his father's testimony. The family court weighed Jones's testimony against Heavner's and found hers more credible.

Regardless of the dates on which they occurred, the family court found Jones pulled a gun threatening to kill a man that looked at Heavner, he pointed a gun at Heavner, he threatened to kill himself more than once, left bruises

on Heavner, and threw her against a closet door. The family court also found Jones broke Heavner's cellphone four separate times. Even after the parties broke up, Jones continued to contact and harass Heavner. The family court clearly weighed all testimony and found domestic violence occurred and may again based on Heavner's testimony, which was substantial evidence. Thus, the family court's findings of fact and conclusions of law were not clearly erroneous.

We now turn to Jones's procedural arguments. For his third issue, Jones argues the family court failed to hold an evidentiary hearing within fourteen days as required by KRS 403.735(2)(a). He claims he preserved this argument by objecting to the second continuance of the final hearing. However, upon review of the video record, Jones did not make this argument below. At the hearing on March 9, 2022, Jones's counsel objected to the second continuance, arguing that continuing the hearing to March 30, 2022 would mean his Second Amendment rights being affected for a total of six weeks between the entry of the EPO and final hearing.

Counsel never mentioned KRS 403.735(2)(a) in his objection to the continuance, and it is inapplicable to this situation. KRS 403.735(2)(a) provides: "If the adverse party is not present at the hearing ordered pursuant to KRS 403.730 and has not been served, a previously issued emergency protective order shall remain in place, and the court shall direct the issuance of a new summons for a

-13-

hearing set not more than fourteen (14) days in the future." Jones was served with the petition and was present for the first hearing date. He requested the first continuance. This statute does not apply to continuances after the adverse party is served with the petition. Additionally, Jones caused much of the delay as noted by the family court. Thus, this argument is unpreserved and unfounded.

Fourth, Jones argues the family court erred in failing to make written findings of fact and conclusions of law beyond checking the boxes on form AOC-257.3. Counsel alleges this argument was preserved by filing his motion for written findings of fact on March 9, 2022, three weeks before the final hearing. Jones did not file any post-judgment motions requesting additional findings under CR[3] 52.02, so although he filed a preemptive motion, this argument is unpreserved.

Additionally, when issuing a protective order, family courts are only required to make two findings: "(1) whether an act of domestic violence and abuse, dating violence and abuse, stalking, or sexual assault has occurred, and (2) whether it may occur again." *Smith v. McCoy*, 635 S.W.3d 811, 817 (Ky. 2021). As in *Smith,* the family "court made both of these findings in writing on AOC Form 275.3" by checking the requisite boxes. *Id.* "Any additional factual findings the trial court makes in issuing a protective order are merely supporting those

---

[3] Kentucky Rules of Civil Procedure.

-14-

ultimate factual findings and are not 'essential[]'" under CR 52.01. *Id.* Thus, the family court made sufficient findings of fact and conclusions of law.

Finally, Jones argues the family court erred in accepting Heavner's amended petition as it was defective statutorily and procedurally. Jones makes several sub-arguments, which we will address in turn. Jones argues Heavner failed to move the family court to amend her petition. CR 15.01 provides:

> A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be longer, unless the court otherwise orders.

In Jones's motion for a continuance, he requested Heavner provide him more specific dates and times of the alleged incidents, so he could review video footage from his father's house. The court ordered Heavner to provide the information Jones specifically requested. Jones requested clarification of the petition in writing, and the family court ordered Heavner to provide the information requested. Arguably, she had both written permission and leave of the court to amend her petition.

Regardless, CR 15.01 permitted Heavner to amend her complaint as a matter of course. The domestic violence statutes, specifically KRS 403.730 and 403.735, describe an abbreviated and expedited hearing schedule and make no mention of responsive pleadings. The statutes do not specifically prohibit responsive pleadings, but we need not pass on that issue. Although Jones filed a motion to dismiss and other motions before Heavner filed the amended complaint, "[a] motion to dismiss is not a responsive pleading." *Kentucky Lake Vacation Land, Inc. v. State Property and Bldgs. Commission*, 333 S.W.2d 779, 781 (Ky. 1960). Heavner filed her amended petition exactly twenty days after filing her original petition and Jones had not filed a responsive pleading, so she was entitled to file her amended petition as a matter of course.

Next, Jones argues the petition did not meet the statutory requirements of a DVO petition under KRS 403.725(3) and (4). This argument is unfounded and unsupported by case law. The statute refers to the initial petition and does not mention amended petitions. Heavner's amended petition incorporates her original petition by reference, and Jones does not allege the initial petition was deficient.

Additionally, Jones argues the amended petition violates the Kentucky Penal Code because Heavner's amended petition contradicts her original petition. The family court never found that Heavner committed perjury under KRS 523.080. As we discussed above, the family court weighed the credibility of Heavner's

-16-

pleadings and testimony and found in her favor.  We cannot, for the first time on appeal, determine Heavner committed a crime.  The trial court considered this argument below and appropriately weighed her credibility.  Thus, the family court did not err in accepting Heavner's amended petition.

## **CONCLUSION**

For the foregoing reasons, we affirm the domestic violence order of the Daviess Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Christopher W. Riccio
Owensboro, Kentucky

BRIEF FOR APPELLEE:

Katina B. Miner
Bowling Green, Kentucky